ISAAC G. MAGRUDER AND ELIZABETH HIS WIFE *vs.* F. L. DARNALL.

## F. L. DARNALL *vs.* ISAAC G. MAGRUDER AND WIFE. *December,* 1847.

A guardian may be responsible to his ward as bailiff, or guardian before he bonds; but in such a case, the bill should charge an entry on the ward's estate, and perception of profits before he bonded.

But where the bill is framed in reference to his duty as guardian, deriving his authority as such from his appointment, the account should be taken from the date of his bond.

When it is claimed to charge a guardian with perception of rents and profits before he bonded, as well as after, and there were no allegations in the bill on the subject of profits before his appointment, that question is not in issue in the cause.

So, where a widow administered upon her *first* husband's estate, her *second* husband cannot be made responsible for receipts prior to his marriage, without she is a party to the bill, and those receipts put in issue by proper allegations.

A release of all claims against a guardian concerning specific personal property, is evidence of the delivery of such property to the releasor, his ward.

An appraisement of a ward's property, made by order of the Orphans court, is not conclusive evidence of the value of such property against the guardian; he may rebut it by proof. The act of 1793, ch. 101, sub-chap. 12, sect. 6, does not make it conclusive.

An account of a guardian charging himself with one year's use of the minor's estate, and crediting the whole amount of allowances—examined and passed by the Orphans court which appointed him—is a judicial act of that court, and is *prima facie* evidence of the matters therein contained. It may be impeached by proof.

The court will not reverse a decree, on the ground of error committed in the mode of averaging proof, when assured, that the whole evidence in the cause fully justified the credits allowed in relation to the subjects affected by such average.

Where the entire estate in the hands of a guardian is not more than necessary to pay expenses, proper and necessary to be made, and which were made, the court will not reverse a decree, to enable them to charge the guardian with a greater sum by way of interest.

A guardian in a trust of considerable duration, who performed his duties, except in a failure regularly to pass accounts—who, however, promptly answered—threw no obstacles in the way of investigation, and rendered a general account in his answer to a bill filed against him, is entitled to a commission of seven and one-half per centum.

Where the allowance of that rate of commission exhausted the balance for which the Chancellor decreed, this court reversed the decree, with costs, and dismissed the bill.

CROSS APPEALS from the Court of Chancery.

The bill in this cause was filed on the 18th December, 1839, by *Isaac G. Magruder and wife*, and alleged that *Elizabeth*, his wife, was one of the heirs of *Richard Hill*, who died in the year 1816, possessed of real and personal property; that in a few years his widow, *Margaret Hill*, intermarried with *Francis L. Darnall*, who jointly with *Joseph Wilson*, administered on the personal estate of *Richard Hill*; that after said administrators had settled up the estate of *Richard Hill*, *Francis L. Darnall*, who was at that time in the possession of the entire real and personal estate of *Richard Hill*—the children of *Richard Hill*, four in number, *being all minors*—applied to the *Orphans Court of Prince George's County* for the appointment of a guardian thereto; that he was accordingly appointed for all of them, and accepted the trust, and took and retained possession of all their property; consisting of lands, negroes, stock, &c.; that as guardian, he continued in possession of the said *E's* property until the year 1830, or thereabouts, deriving great profits therefrom; that he sold several valuable negroes, for which he has never accounted; that he has never rendered any accounts, nor in any way settled with the said *E*. or her husband, nor with the said *Orphans Court*. *Prayer*, that *F. L. D.* may answer, account, and also discover the amount of his sales, receipts, &c. and for general relief.

The defendant answered the bill, fully and particularly admitting the relationship of the parties, and his possession of

*E's* estate; that he paid off the debts of *R. H.* and endeavored to avoid a sale of any of his estate for such payments; that in this way he paid off many debts, which do not appear in his account of the 18th November, 1818, being paid after that time; that he passed no final account. The answer then proceeded to discover how the defendant had administered the trust.

The appraisement of the personal estate of *R. H.* showed
that it amounted to       .       .       .       .       .   $12,208 87
The increase of the personal estate,   .       .         1,473 37½
The real estate, consisting of a farm of five hun-

    dred acres, with improvements,   .       .       .     10,000 00

The negroes of the estate were of all ages, from two to seventy years of age, though principally under twenty-five; many of them quite young. *Elizabeth's* proportion amounted to $1,630.

The defendant filed with his answer a release, dated 16th June, 1828, from *Philip, Mary Ann, William* and *Margaret Elizabeth Hill* to *F. L. Darnall and wife*, their guardians of "all and all manner of actions, accounts, debts, dues and demands which they *ever had, now hath*, or which they at any time hereafter can or may claim or demand against the said *F. L. D. and wife*, touching or concerning the management or disposition of any of the said *P's, M. A's, W's* and *M. E's* estate, or by reason of any money, rents or profits by them received out of the same, or any payments made thereof during the minority of the said releasors," &c.

With this answer a variety of accounts were filed, in relation both to the administration and guardianship of the defendants: statements of accounts of sales of crops, correspondence concerning the same. A commission was also issued, under which a great mass of proof was collected.

On the 15th November, 1842, the Chancellor (BLAND) by consent decreed an account between the parties, and referred the cause to the auditor of his court.

That officer stated two accounts—A and B. In the *first*

account he charged *F. L. Darnall*, guardian, as of 16th January, 1843.

1. To personal estate, which came to his hands, as per answer of *Darnall*, and first of the administrators of *Hill*, filed 10th November, 1842, . . . . . $ 11,279 05

2. To iucrease, which came to his hands, as per appraisement, filed 10th November, 1842,      1,473 38

3. To annual value of personal estate, as per appraisement, at five per cent. on $12,752 43 from 15th April, 1818, to 15th March, 1832— 13 years 11 months, . . . $8,873 56

4. To amount of annual value of real estate, estimated as per appraisement, on $10,000, . .      6,958 33
                                                                    ————————
                                                                    15,831 89

5. To proceeds of sales—negro *Harry*, . . . . .      415 00
Deduct jail fees, . .        4 76
                                                    ————————
                                                                        410 24
                                                                    ——————————
                                                                    $ 28,994 56

Cr.

1. By amount of personal estate transferred to the complainant, *Elizabeth* and others, his wards, as per answer, or accounted for, as per contra, . . . . . . . .      $ 8,501 62

2. By one-third thereof, being share of the widow of *Richard Hill*, deceased, now wife of the defendant, . . . . . . .      4,250 81

3. By one-third of the annual value, as per contra, being the widow's share thereof, .      5,277 29

4. By commission on $10,554 59⅔, being two-thirds of the annual value, at seven and a half per cent. . . . . . . .      791 59

5. By one-third sales—negro *Harry*, . .      136 75

6. By balance distributed below, . .      10,036 50
                                                                    ——————————
                                                                    $ 28,994 56

To balance, per contra, distributed as follows: $10,036 50

   1. To *Isaac G. Magruder and wife*, for one-quarter of said balance, . . $2,509 12½

   2. To same, for one-third of the share of *Philip Hill*, of the annual value of the real estate, from 15th April, 1825, to 15th March, 1832—

6 years 11 months, . . .   192 13

                          2,701 25½

   3. To *William W. Hill*, same,   2,701 25½

   4. To *Mary Ann Hill*   "   2,701 25½

   5. To *Philip Hill* for one-quarter do. . $2,509 12½

     Deduct as above,    576 39

                          1,932 73½

                                   10,036 50

### ACCOUNT B.

DR.—*F. L. D.*, guardian, in account with *Isaac G. Magruder* and *Elizabeth* his wife—16th January, 1843.

   1. To amount due by account A, . . $2,701 25½

     CR.

   1. By this amount, as per account passed Orphans court 13th February, 1821,  $197 38

   Deduct commission allowed on account A, . . . . .   14 80

                                   $182 58

   2. By this amount for board, clothing, and education of said *E.* for 12 years 11 months, excluding the year 1820, allowed by Orphans court, . . . . . . . .   1,293 66

   3. By negro hire, . . . . .   12 00

   4. By balance due, with interest, from 13th March, 1832—10 years 10 months 1 day, until paid, . . . . . . . .   1,213 01

                              $2,701 25½

On the 7th March, 1843, upon the application of the defendant, the Chancellor (BLAND) remanded the cause to the auditor for a further report, with liberty to the parties to take proof. This order led to the introduction of much more proof into the cause, shewing further payments by *Darnall & wife*, &c.

The complainants in equity excepted to the proof taken under one of the commissions, and directed the auditor in reporting his accounts, to state one for them, showing their claim on the principles of the accounts heretofore stated, subject to the following exceptions and corrections:

1st. In account A, he will charge the defendant with the annual value of the personal estate, at the rate fixed by the *commissioners*, and sanctioned by the *Orphans court*, viz:—$684 11, and not, as charged in said account, at a much lower rate.

2d. In account A, he will not credit the defendant with $8,501 62—the two-thirds of $2,752 43—which he assumes the defendant paid away, but credit with his actual payments as appear from the proof, especially the exhibits filed with the answer.

3. In account B, the auditor will charge the defendant with the complainants' share of *Ann Magruder's* personal estate, and with the annual income thereof, because there is no foundation for the assumption in the report, that it ever was transferred to the complainant, *Elizabeth.*

On the 25th September, 1843, the auditor made another report:—

Accompanying this report were accounts A, No. 1, made up to the time of his report, in which *F. L. D.*, guardian, in account with the estate of *Richard Hill*, deceased, was debited as in account A, with $28,994 56, and credited with all the credits of that account, and further sums for taxes, repairs, &c. leaving a balance for distribution of $9,064 66, which was divided as before in account A, awarding the complainants $2,458 29½.

B, No. 1, charged *F. L. D.* as guardian in account with *I. G. M. & wife* with that balance, and credited him as follows:

By the amount, as per account, passed by the Orphans court 13th February, 1821, . . . $197 38

Deduct commission allowed in account A. No. 1, . . . . 14 80
$182 58

By this amount for board, clothing and education of complainant *E.* for 12 years and 11 mos. excluding the year 1820, allowed . . . 1,293 66

By hire of *Tildy,* in 1829, . . . . 12 00

By interest on $480, value of *Priss* and *Moses,* who died in 1825, at 5 per cent. 1 July, 1825, to 15th March, 1832, less commissions, . . 148 87

By balance due 15th March, 1832, . . . 821 18

$2,458 29½

The interest on this balance up to date of auditor's report, was . . . . . . $567 99

Account A, No. 2, charged *F. L. D.,* as guardian, with $30,571 35, and credited him with divers sums, leaving $10,435 46 for distribution among the four children of *Richard Hill.* Of this balance, $2,800 99½ was awarded to the complainants.

Account B, No. 2, charged *F. L. D.,* as guardian, in account with complainant, with the balance of $2,800 99, with one-fourth of two-thirds of the *personal* estate, according to the *appraisement* of 10th November, 1842, $2,280 37; with the *increase* of *E's* share of the *personal* estate, up to the year 1832, after the appraisement, $605; with *E's* share of *Ann Magruder's* personal estate, $740 75, and interest thereon, $208 75. This account then credited *F. L. D.* with the *three first items* of A, No. 1; with the value of *Priss* and *Moses,* deceased negroes, $480; interest and less commission thereon, $148 87; commissions, $15 66, leaving a balance due complainants of $4,503 10, and as of 25th September, 1843.

The interest on this balance from 15th March, 1832, to 25th September, 1843, 11 years 6 months 10 days, $3,114 64, was also allowed.

The complainants excepted to this report and Accounts A and A and B No. 1.

The defendants excepted to all the auditor's reports and accounts, and to the averments of the bill.

On the 27th February, 1845, the Chancellor (BLAND) again referred the cause to the auditor, with directions: "Following the case stated in the bill, which calls for nothing more than an account from the defendant, during his guardianship, of all his ward's property, however acquired, and of certain negro slaves, alleged to have been sold by him; the accounts to be stated cannot be allowed to embrace any other subjects. Commencing on the day when he was appointed guardian, and terminating on the day when the plaintiff, *Elizabeth*, attained the age of sixteen, when the defendant's guardianship ended."

" The judical accounts in the proceedings mentioned, stated and passed by the Orphans' court of *P. G.* County, as of the 8th January, 1821, as a guardian's account, of the defendant with his then ward, the plaintiff, *Elizabeth*, must be received as a judicial act of that court, and as *prima facie* evidence of the matters therein contained, leaving the respective claims and pretensions of the parties not comprehended thereby, and subsequent thereto, to be regulated by the pleadings and proofs in this cause."

" "The estimate of the plaintiff, *Elizabeth's*, estate, during the time of her being the ward of the defendant, must be made as of a share of so much *undivided property*, until the time of the distribution, and thenceforward and to that extent, as of so much property held by her in *severalty*."

" The amount of the public taxes, and the costs of the necessary repairs of the edifices on the realty, made by the defendant during his guardianship, to be allowed."

"Interest is to be charged and allowed on the balances shown at the end of each year."

" The defendant, as guardian, is to be allowed a commission of only five per cent."

" The several reports of the auditor, and all exceptions

thereto, so far as the same may be at variance with this order, are rejected."

The Orphans court account mentioned in the preceding order, was the first account of *F. L. D. and wife*, guardians to *Elizabeth Hill*, in which they charged themselves *with one year's use of the minor's estate*, $197 37, and claimed allowance for a medical bill; sinking a well; proportion of repairs of dwelling and tobacco houses; cost of a new wagon for the plantation; county taxes; board, clothing and necessaries, ($100 91,) furnished the minor; register's fees, and a commission of seven and a half per cent. on $197 37. These exhausted the sum debited the guardian. This account was sworn to by *F. L. D.* and *after due examination, was passed by the Orphans court on the 13th February*, 1821.

Similar accounts were, at the same time, passed in relation to the other children of *Richard Hill*.

On the 22d September, 1845, under the order of the previous February, the auditor reported :—

Account C, between *F. L. D.*, guardian, and the estate of *Richard Hill*, deceased. In this account he debited *F. L. D.*

1. With the annual value of the real estate, as per testimony, from 1st Sept. 1819, to 1st January, 1820, 4 mos. at $298 per annum,   $ 99 33

2. With same, from 1st January, 1821, to 1st January, 1829—8 years,  2,384 00

                                    $ 2,483 33

3. With annual value of personal estate, 4 mos. as above, at $500 per annum,  .  .  .  .  .  .  166 67

4. With same, *P. E.*, from 1st January, 1821, to 24th June, 1824—3 yrs. 5 months 23 days,   .   .   .  1,740 28

                                    1,906 95

5. To proceeds of sales—negro *Harry*— with 5 years interest,   .   .   .   .   .   .  533 31

                                  $ 4,923 59

And credited *F. L. D.*—

| | |
|---|---:|
| 1. By commission on $4,923 59, at five per cent. | $ 246 18 |
| 2. By taxes, . . . . . . . | 216 24 |
| 3. By repairs, &c. . . . . . | 640 08 |
| 4. By balance, . · . . . . . | 3,821 09 |
| | $ 4,923 59 |

Of that balance, $636 85 in *E's* own right, and $41 05, one-third of the share of *Philip Hill*, making $677 90, was credited to the complainants, as of 22d September, 1845.

Account D was stated between *F. L. D.* as guardian, with the complainants. It debited him with $677 90, and interest on balances to 1st January, 1826, $7 53 = $685 43, and credited him with $844 41 for board, clothing and education, from 1st September, 1819, to 1st January, 1820, and from 1st January, 1821, to 1st January, 1829, at $100 per annum, and interest, $11 08. This account left due the guardian $158 98, with interest from 1st January, 1829.

Account E was between the same parties—debited *F. L. D.* with $677 90 as before, and interest, $33 64 = $711 54, and credited him with $687 50 for board, &c. at $82 50 per annum, leaving a balance of principal due of $24 05, and interest, $24 12 = $48 16 to the complainant, *E.*

To these accounts, both parties excepted. The substance of the exceptions will appear in the points, raised by the respective counsel in this court, and in the opinion of this court.

The Chancellor (BLAND) ratified account E, and both parties appealed to this court.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS, MAGRUDER and MARTIN, J.

By C. C. MAGRUDER and A. RANDALL for *Magruder and wife.*

This bill was filed 12th October, 1838, by *Magruder and wife* against *Darnall,* for an account of the wife's property, composed principally of her share of her father's estate, and

the rents, issues and profits thereof, with which *Darnall*, as her guardian, was chargeable.

It appears that *Richard Hill*, the father, died intestate in the spring of 1817, possesed of valuable real and personal estate, leaving a widow, (who a year after intermarried with *Darnall*,) and four infant children, the youngest of whom, the female complainant, was born in 1812, and intermarried with *Magruder* in 1836. *Hill's* widow, and her brother, *Joseph Wilson*, were appointed administrators, and settled up the personal estate, which was delivered over to *Darnall*, on his intermarriage with the administratrix. *Darnall* was appointed guardian of the children, on the———day of———1819, and continued to hold the property of the female complainant, until about 1832, and refused to account for it, or its profits.

The real and personal estates of the wards were valued 20th March, 1820, by appraisers appointed by the Orphans court, at $1154 11, per annum, and taken by *Darnall* at that appraisement, which was never changed.

The Orphans court afterwards appointed others to appraise and distribute the personalty among the widow and children of the deceased, which was done 24th June, 1824. The share allotted to the female complainant was valued at $1630.

The defendant filed his answer, 30th Sept. 1839, admitting the death of *Richard Hill*, leaving the family and property as alleged; his widow's administration of his estate; her intermarriage with *Darnall;* his appointment as guardian of the children, and taking possession of their estate; he filed various accounts, from 1817 to 1837; denied his indebtedness; *avers that the court* allowed him all the profits, &c., for supporting the wards; and relies on a release purporting to be executed by the wards, 16th June, 1828, when the female complainant was about sixteen years of age.

Much testimony is taken by both parties under a commission.

The complainants excepted to this testimony, and complainants and defendant except to the auditor's accounts. Defendant also excepted to the averments of the bill.

The chancellor decreed 11th October, 1845, that defendant

pay complainants $48 16, with interest and costs, from which each party appealed to this court, and entered into an agreement to take up one record, and otherwise provide for the payment of the costs of the appeal.

The complainants will contend, that the defendant is responsible to them in this suit, for his ward's property, and the rents, issues, and profits thereof, from the time it came into his possession, or the possession of his wife, with which he ought to have been charged, viz:

1st. With the rents of the real estate, and the time of the personal estate, from the death of his ward's father in 1817, to the time of his being appointed guardian, 15th April, 1818, during which time this property was in the possession of the wife of the defendant.

2d. With the value and hire, or profits of the personal property of the female complainant, bequeathed to her by *Mrs. Anne Magruder*, of whose estate the defendant was the executor.

3d. With the appraisement (made 20th March, 1820, by the authority of the Orphans court,) of the annual value of the ward's real and personal property, derived from her father, and that no deduction for taxes, repairs, medical accounts, &c. &c., are to be made therefrom.

4th. With negro *Nelly* and personalty other than negroes, returned by the appraisers, or with an allowance for their value and use.

5th. With interest on all these sums in half yearly rests.

They will also contend, that the complainant, *Darnall*, ought not to have been allowed any of the following credits:

6th. The sums charged against the female complainant, in the account purporting to be a guardian account, passed by the Orphans court, whereas, it was no such account, and ought to have been rejected as illegal; and its charges against the female complainant, are unjust and illegal.

7th. Credit for the full share of the ward's personal property, whereas it no where appears that the defendant ever distributed

or paid over any other of that property to his ward, the female complainant, than the negroes.

8th. Board and maintenance of the female complainant, at $82 50 per annum, whereas, according to the proof, most to be relied on, it should have been only $75 00 per annum, nor should he have been allowed for this board and maintenance for so long a time, or by the mode of averaging the proof as stated by him.

9th. For raising and supporting the young negroes of the female complainant, and especially the excessive charges therefor; and that the mode of averaging the proof of many witnesses who testify as to the same sum, as one witness, is erroneous, because such an average should be ascertained by counting, in the average, every witness who testifies thereto.

By W. H. Tuck and Alexander for *F. L. Darnall and wife.*

*Magruder and wife*, filed their bill against *Darnall* for an account, alleging that *Elizabeth*, the complainant, was one of the daughters of *Richard Hill*, deceased, who died in 1816, leaving a widow, *Margery*, (who afterwards intermarried with *Francis L. Darnall*,) and four children; that he left a large real and personal estate; and after the settlement of the estate by the executors, the said *Francis L. Darnall* was appointed guardian to the said children; took possession of the property, used it, received rents, profits, &c. The bill alleges that he has never accounted *for his said guardianship*, and prays an account for his *said guardianship and trust*, and that he may set forth the amount and value of the property received by him, the names of the negroes, the annual crops, issues and profits, with his appropriations and the receipts therefor.

*Darnall* answered the bill, in which he states that complainant is one of the children of *Richard Hill*; that he married his widow in 1818; and in 1819, *he and his said wife* were appointed guardians to the children; that by his marriage, he became one of the administrators of the deceased, whose estate was then unsettled; that many debts were due, which he went

on to pay, without making sale of the property, in order to preserve the same for the children, and for which he has never received any credit, as administrator : the answer shews, that by direction of the *Orphans court*, the estate was valued, and believing the annual value as estimated by the commissioners to be too high for the reasons stated, he refused to take the estate at that estimate, but did agree with the court to take the estate, and support the children, and deliver the property over as they might arrive at age.   The defendant avers, that he made this arrangement for the benefit of the children, and offers to enter into the most rigid account, that the court may judge between them as to the manner in which his duty has been discharged, averring at the same time, that the complainant will be largely indebted to him, if justice and equity prevail, that a division of the personal estate took place in 1823, by direction of the *Orphans court*, when thirteen negroes were allotted to the complainant, seven of whom were infant children, from two to eight years of age, and of the residue, three died in or about the year 1825, and the other three he shews to have been employed or used, or disposed of by the complainant, *Elizabeth.* They were all, however, supported by defendant, until he left the estate in 1832, except those who had died, and *Tilly* when she was hired out.   That those negroes were delivered to complainant in 1828, and have ever since been in her possession, at least up to the time of her marriage.   The balance of the personal estate he left with the children, when he left the land in 1832, since which time a division has been made among them. This defendant expressly denies that he received any profit for the estate; but on the contrary avers, that it required his own private means to support the estate and family.   The answer shews, that the real estate was poor and unproductive, and that after deducting his wife's third of the rents and profits, one-fourth of the balance would not pay the expense of maintaining the complainant and her negroes, from 1818 to 1832.   He files with the answer an account, shewing the disbursements and payments made by him; and also an account of all crops sold and received by him, as far as they can now be ascertained.

The exhibits shew the willingness of the defendant to lay before the complainant and the court, all the details and explanations of the transactions at issue between the parties.

The witnesses of defendants give their opinions of the value of the *real* and *personal* estate of *Richard Hill*, from the time of his death until 1832, and of the dealings of the defendant with the property. These opinions are very much at variance with the testimony on the part of the defendant, thereafter taken, which testimony, it is submitted, is sustained by the exhibits and other proof in the cause.

The inventory of the estate of *Richard Hill*, exhibited with the complainants' bill, and filed by them under the commission amounts to $12,208 87, comprising fifty-six negroes, *mostly women and children ;* 25 between the ages of 1 and 10 years ; and 10 (men and women,) between the ages of 44 and 94, viz : 44, 45, 45, 60, 62, 63, 60, 68, 52, 94. Some of them, by the appraisement, shewn to have been worth nothing. The farming utensils and stock appear to have been of small value.

It will be found that the witnesses exhibit a knowledge of the subject matters in controversy, for having had in many instances, personal intercourse with the defendant and the property, in the management of the estate. They place a very different estimate upon the property, and represent it as by no means so valuable as the complainant's witnesses had done. This testimony sustains the answer in many material points, and deserves consideration, as proceeding from persons who had good opportunities of becoming acquainted with the subjects of the examination ; and besides being more in number, their opinions would seem to command more weight than the three witnesses of the complainant.

Certain guardian accounts, passed by the *defendant and wife,* as guardians, to the children of *Richard Hill*, dated 8th January, 1821, also appear. *These accounts appear not to have been recorded in the register's office* until May, 1842, when it was done on the application of the defendant and wife. *John Tyler* was examined, and *Leonard H. Chew*, to shew the practice of

the office in respect to such accounts; the complainants insisting, that they are not to be regarded as of any validity.

Both parties excepted to these accounts of 25th September, 1843.

The defendant will rely on the points presented by his exceptions to these accounts, in bar of the complainants' claim.

27th February, 1845, the Chancellor passed the order, ante 276, &c.

In obedience to this order, the auditor reported accounts C, D, E, by the last of which he makes the defendant indebted to the complainant $48 06, with interest on $24 04, from date.

Both parties excepted. The Chancellor, on the 11th October, 1845, passed a final decree, ratifying and confirming account E—from which both parties appealed.

The defendant, *Darnall*, will contend on his appeal, in addition to the points presented by his exceptions to the auditor's reports:

1st. That the recovery of the complainants, if any be had, must be limited to the time of the alleged guardianship, and be confined to the particular subject matter, in respect of which the bill charges defendant, and prays an account against him; that is to say, the property acquired by the said *Elizabeth* from her father's estate.

2d. That the auditor has improperly rejected the evidence of defendant's witnesses, in estimating the annual value of the estate of *Richard Hill*, and has placed an excessive value on said estate.

3d. That the auditor has not allowed a sufficient sum for the support of the complainant, *Elizabeth*, and has not allowed him for the support of her young negroes.

4th. That the auditor has improperly charged defendant in respect of the property of complainant, acquired for *Ann Magruder's* estate.

5th. That the account passed by the defendant and wife, as guardians, was properly admitted to record by the Orphans court, and must be regarded as the judicial act of that court,

and should have been taken by the auditor as evidence of the value of the estate, and of defendant's allowance as guardian, in stating the account for subsequent years.

6th. That the rate of commission allowed is too low under the circumstances of the cause.

7th. That if the account be extended beyond the direction of the guardianship, and to other matters than those expressed in the bill of complaint, the defendant will be entitled to a decree against the complainants, for the balance that the pleadings and proofs in the cause may shew in behalf of defendant; and it will be contended, that if such account be stated, the complainants will be largely indebted to defendants.

ARCHER, C. J., delivered the opinion of this court.

The court below did not err in directing the account to be taken from the date of the bond given by *Darnall* as guardian. However *Darnall* might be responsible as bailiff, or guardian before he bonded as guardian, for an entry on the estate of the complainant, and for any perception of the rents and profits before such bonding; if it was designed to charge him in this case for such profits, it was indispensable that the entry upon the estate should have been distinctly charged. Instead of this, the whole bill is framed in reference to his duties as guardian, deriving his authority as such from his appointment.

It is said he was in possession when he applied to be appointed guardian, but when he took such possession, does not appear by the bill. It is afterwards averred, that being appointed guardian, he took possession of the real and personal estate. To allow an account to be taken from a period anterior to the defendant's appointment, would operate as a surprise, and as there are no allegations on the subject, we do not think the question is in issue before the court. The same remarks may be made in reference to the attempt to charge the defendant, the husband of *Mrs. Darnall*, with the perception of the profits by her, anterior to her marriage with the defendant. She was administratrix of her husband, (*Hill,*) and although

as husband he may be responsible for her acts, she should have been made a party, and some charge should have been made in the bill, which would have given notice to the defendant of the claim, and have put in issue the perception of the profits by her; nothing is said in the bill looking to this subject, and no account was properly, therefore, taken of this matter in the court below.

In relation to the value and hire, or profits, of the personal property of the female complainant, bequeathed to her by *Mrs. Magruder*, of whose estate the defendant was executor, with which the complainant seeks to charge the defendant, it will be unnecessary for us to examine the question whether the bill is so framed as to admit of such a charge; because we think there is no proof in the cause of any value, to be attached to the use of this property, beyond its expense, and in relation to the delivery of the property itself, the release given by the ward may be relied on as evidence of that fact.

It is urged that the defendant should be charged with the appraisement made 20th March, 1820, by authority of the Orphans Court, upon the ground that such evidence ought to be conclusive against the guardian of the value. The act of 1798, ch. 101, sub chap. 12, sec. 6, does not make it conclusive evidence. It only declares it shall be evidence against the guardian, and we think it may be rebutted by evidence. That there are inaccuracies in this appraisement is unquestionable, and there is much evidence going to show that it was an inflated valuation.

The Chancellor was right in pronouncing that the guardian's account stated and passed by the Orphans court of *Prince Georges* County, as of the 8th January, 1821, was to be received as a judicial act of the court, and as *prima facie* evidence of the matters therein contained. Evidence which has been offered to impeach it is entirely inconclusive, and cannot form the basis of any judgment against it.

It has been urged as a *seventh* reason for the reversal of the Chancellor's decree, that the defendant ought not to have had the credit for the full share of the ward's personal property.

This point is made on a misconception of the evidence. It is proved by *Joseph Wilson* and *William Hill*, that this property was passed over to the female complainant.

Errors have been committed in the mode of averaging the proof, in relation to the board and maintenance of the ward, and in the mode of averaging the proof in relation to the expense of maintaining and raising the young negroes; but we think that circumstance ought not to occasion the reversal of the decree, as we feel assured the evidence in the cause fully justifies the credits which have been allowed to the defendant on these accounts.

Nor do we feel disposed to charge the defendant with more interest than he is charged with in the account which had been ratified. The whole evidence in the cause which has been carefully examined, induces us to believe that the estate in the hands of the defendant was not greater than was necessary to pay expenses, and necessary and proper to be made.

So far, therefore, as the appeal of *Magruder* and wife is concerned, we affirm the decree of the Chancellor, with costs.

With regard to the appeal of *Darnall*, we think he was entitled to higher commissions. The Chancellor has allowed only five per cent. commissions. This amount of commission was allowed in *Diffenderffer vs. Winder*, notwithstanding there was such conduct on the part of the trustee, as induced the court to charge him with compound interest. This has been a trust of considerable duration, and the guardian seems to have performed his duties, except in a failure regularly to pass his accounts. He has, however, promptly answered: appears to have thrown no obstacles in the way of the investigation, and has rendered a general account. We think he is at least entitled to as great a rate of commission as was allowed in the case of *Hatton vs. Weems*, which was seven and a half per cent. Allowing to him this commission, the balance found against him by Account E, would be more than satisfied. The decree must therefore be reversed, with costs, and the bill dismissed, with costs.

DECREE REVERSED AND BILL DISMISSED, WITH COSTS.