## IN RE ESTATE OF JOAN CLARK GRASTY.

[No. 48, April Term, 1933.]

*Decided June 21st, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Emory H. Niles,* with whom were *Niles, Barton, Morrow & Yost* on the brief, for the appellant.

ADKINS, J., delivered the opinion of the Court.

The sole question in this case is whether income from a trust estate, paid by the trustees to the guardian of an infant during the minority of the infant, is income within the meaning of section 184 of article 93 of the Code, on which the guardian is entitled to commissions. The language of that section is as follows: "Every account of a guardian shall state his expenditures in maintaining and educating his

ward, not exceeding the income of his estate, unless allowed by the court; and for no balance of money in his hands shall he be charged interest, unless he shall consent to take the same on interest, but the court may direct him to invest the same, and for the trouble and care of such guardian the court may allow any commission not exceeding ten per cent. on the annual income of the estate."

Charles H. Grasty adopted Joan Clark Grasty as his daughter, and in his lifetime executed two deeds of trust by which he conveyed certain securities to the Bankers' Trust Company of New York and to the City Bank Farmers' Trust Company, formerly known as the Farmers' Loan & Trust Company of New York. In the deed to the Bankers' Trust Company he directed the trustee to "collect, recover and receive the issues, interest, income and profits thereof, hereinafter called 'income,'" and, after deducting expenses and the commissions of the trustee, to pay over said income (a) to himself for life; (b) after his death to his wife for life; (c) after the death of his wife to the guardian of Joan C. Grasty during her minority for her benefit; (d) after her becoming of age, to Joan C. Grasty for life; (e) after her death to distribute the principal to her issue, if any, and, if none, to others designated in the deed. The provisions in the deed to the Farmers' Loan & Trust Company were the same, except that, after the death of the settlor, $1,200 per year of the income was to be paid to Joan during the life of his wife, and, after the wife's death, as in the first-mentioned deed. Mrs. Grasty was named as the guardian of Joan, and certain others were designated as her successors. Mr. Grasty died in 1924, and Mrs. Grasty in 1930. Joan was then ten years old. The designated guardians to succeed Mrs. Grasty declining to serve, the Maryland Trust Company, the appellant, on February 15th, 1930, was appointed guardian.

On April 1st, 1933, the appellant filed a petition in the Orphans' Court of Baltimore City setting out the above facts, and further alleging that from time to time under orders of court it has invested funds, employed persons to

take charge and custody of said infant in the United States, England, and France, has paid various obligations incurred on behalf of said infant, and has in general exercised supervision and control over the estate of said infant under the direction of court; that the sums received by the petitioner from said trustees have been considered and have been expended under the orders of court as income, as will appear from the reports, petitions, and orders heretofore filed; that the petitioner filed its first guardian account on August 14th, 1931, wherein it was shown that it had received from the said Bankers' Trust Company the sum of $5,938.38, and that it was allowed the usual commissions of five per cent. upon said amount; that the petitioner files with its petition its second guardian account showing, among other things, that since the filing of its first guardian account it has received as income sums amounting to a total of $16,393.82, of which $2,505 has been received as interest upon investments in bonds purchased by it, $8,487.59 from the Bankers' Trust Company, and $5,401.23 from the City Bank Farmers' Trust Company; that petitioner has been advised by the auditor of this court that commissions are not payable upon the income received from said trustees, and that the only sums upon which petitioner is entitled to receive any compensation are the sums received from said investment in bonds, amounting to $2,505, or a total commission of $125.25; that petitioner has received, cared for and expended the sum of $16,393.82 as aforesaid, and has had the responsibility for caring for and expending such sums, which were denominated income by the trust indentures under which they arose, which indentures were designed by the settlor to provide income for the maintenance and support of said ward; that commissions on the income arising from the bond investments made by it would amount to less than 77/100 of one per cent. upon the amounts actually received and cared for by it. The prayer of the petition is for an allowance of commissions upon the full amount of income collected since the filing of the first account.

On this petition this court passed an order that petitioner be allowed five per cent. commission upon the $2,505 income collected by the guardian from the investments in bonds made by it, and that it be allowed no commissions or compensation of any kind upon the said amounts received from the trustees. This appeal is from that order.

We think the learned court below was in error. It seems to have acted on the theory that, as the guardian performed no services in connection with the receipt of the payments made to it by the trustees, it was not entitled to any compensation in connection therewith. The fallacy of this position will be apparent, we think, when the fact is considered that, if the receipts from the trustees had been no more than enough for the maintenance and education of the ward, the guardian, on the court's theory, would have been entitled to no compensation at all, because there would have been no surplus to invest from which an income could be derived. The guardian would then have been entitled to no compensation for the disbursement of the income and the care of the ward. The case of *Magruder v. Darnell,* 6 Gill, 269, seems to be illustrative of the fact that actual substantial effort in the matter of collecting income is not essential to the allowance of compensation. There the guardian of his infant stepchildren took possession of and used the real and personal property of his wards for a number of years. He was charged the value of such use and allowed commissions on the valuation. Indeed there is ordinarily no more effort required to collect interest on bonds than to collect payments due by a trustee, and yet the guardian is allowed commissions on income from investments whether he made them or not.

In *Woerner on Guardianship,* p. 355, it is said: "The true principle according to which courts should allow compensation to guardians is held to be to secure adequate reward according to the circumstances of the case; the court is not limited to the allowance of the commissions on gross income, but may, when justice requires it, allow extra compensation for personal services rendered (citing *May v. May,* 109 Mass. 252, 258); provided the whole does not exceed

just compensation" (citing *Rathbun v. Colton,* 15 Pick.
[Mass.] 471, 485; *In re Emerson, appellant,* 32 Me. 159).
And in 12 *R. C. L.,* p. 1157, sec. 48: "The guardian is en-
titled to such compensation for his services as is reasonable
under all the circumstances, and in some states the com-
pensation is a regular percentage fixed by statute"—citing
*Vanderheyden v. Vanderheyden,* 2 Paige (N. Y.) 287, 21
Am. Dec. 86, and note. And in 28 *C. J.,* p. 1232, sec. 402:
"Under the statutes in most jurisdictions a guardian is en-
titled to compensation for his services, either in the form of
a reasonable allowance, or as commissions on the amount of
his receipts and disbursements as shown by the record."

In Maryland, by the statute hereinbefore set out, the com-
pensation is based on "the annual income of the estate," and
the court may in its sound discretion award such amount,
not exceeding ten per cent., as it may find to be just com-
pensation. In the present instance "the estate" is composed
of the funds created by the settlor by his two deeds. He
might have provided that those funds, or the investments
thereof, should be turned over to the guardian after the death
of his wife, and probably would have done so except for the
fact that he was not giving an absolute estate to the ward,
but only a life estate. The proceeds from these investments,
however, are just as much income from "an estate," as if
the investments had been turned over to the guardian.

It is manifest from the language of the statute that the com-
pensation to the guardian is to be determined not alone from
his trouble in collecting income, but from all "the trouble
and care of such guardian," including that in connection with
"his expenditures in maintaining and educating his ward,"
in selecting proper schools and custodians, and in investing
surplus income. For the purposes of the trusts created by
the settlor, it was more convenient that the corpus should
remain in the hands of the trustees; but the income from
the corpus paid to the guardian is none the less income than
if the investments had been turned over to the guardian.

What would be just and fair compensation for the services
rendered by the guardian in this case rests in the sound dis-

cretion of the orphans' court, within the ten per cent. limit on the income received. Ordinarily the percentage should be less on a large than on a small income. There is much room for the exercise of discretion within the limit; the object being to allow just compensation.

> *Order reversed, and case remanded; costs to be paid out of funds in the hands of the guardian.*

PARKE, J., dissents.