*In re* ESTATE OF GEORGE WINCOX.

*Opinion filed June 21, 1900—Rehearing denied October 4, 1900.*

1. PRACTICE—*trial court may advance case and try it out of its order.* The trial court may, in its discretion, for good cause shown, direct that a case be advanced and tried out of its regular order, and a court of review will not interfere unless there has been an abuse of discretion which works manifest injustice.

2. EXECUTORS AND ADMINISTRATORS—*duties of administrator to collect.* An administrator to collect has no authority, independently of his order of appointment, to pay out any money of the estate for any purpose.

· 3. SAME—*administrator to collect has no authority to pay the widow's award.* That appraisers appointed by the probate court fixed an amount to be allowed as a widow's award does not justify the payment of such sum by an administrator to collect who has no authority to make disbursements.

4. SAME—*administrator to collect cannot receive payment of note before maturity.* An administrator to collect has no power to receive the payment of a note of the estate before maturity, and cannot be credited with the amount paid by him to his attorney as fees for negotiating the payment of such note.

5. SAME—*when administrator to collect forfeits his right to commissions.* Under section 17 of the Administration act, (Rev. Stat. 1874, p. 107,) an administrator to collect who fails to turn over the funds of the estate upon demand by the duly appointed administrator forfeits his right to commissions.

*In re Estate of George Wincox,* 85 Ill. App. 613, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

The following is the statement of the facts of this case, as made by the Appellate Court:

"George Wincox died intestate December 10, 1893. Pending a contest over the validity of an alleged will made by the deceased, one Albert Ellinger was, March 20, 1894, appointed administrator to collect of the estate by the probate court of Cook county, and he having resigned, the same court, on December 1, 1894, appointed

Joseph Salomon in his place as administrator to collect, and letters were issued to Joseph Salomon that day. February 8, 1897, Jesse Holdom was appointed administrator in due course by said probate court and letters of administration issued to him. March 4, 1897, Joseph Salomon, as administrator to collect, filed in said probate court his account with said estate, which is as follows:

" '*To the Honorable Judge of said Court:*

" 'The following is a full, true and complete account of all the receipts and expenditures of Joseph Salomon, administrator to collect:

### RECEIPTS.
#### *Cash.*

This administrator charges himself as follows:

Received from Albert Ellinger, administrator to collect. $6,857.02

#### *Note.*

| | |
|---|---|
| Received note mentioned in inventory in item 1 | 20,000.00 |
| Received five coupon notes thereto attached | 3,000.00 |
| Total | $29,857.02 |

### EXPENDITURES.

| | |
|---|---|
| Widow's award paid Mrs. Jennie Wincox (voucher 1) | $1,865.00 |
| Rogerson & Son, undertakers | 145.00 |
| Stenographer (No. 3) | 5.00 |
| Bulkley, Gray & More (vouchers 4, 5 and 6) | 122.15 |
| Mary Ohman, nursing deceased (No. 7) | 23.50 |
| Physician, in last illness | 20 00 |
| Mrs. Stowell | 100.00 |
| Administrator | 1,000.00 |
| Attorney's fees, subject to court's order | 1,750.00 |
| Total expenditures | $ 5,030.65 |

### RECAPITULATION.

| | |
|---|---|
| Total receipts | $29,857.02 |
| Total expenditures | 5,030.65 |
| Balance | $24,826.37 |

Respectfully submitted,

JOSEPH SALOMON.'

"The above was duly verified by said Joseph Salomon. Objections to said account were filed by the heirs January 28, 1898. An order was entered by the probate court reciting that it appeared from the account of Joseph Salomon that there was due from him the sum of $24,826.37, and it was ordered that the said sum of $24,826.37 so ad-

mitted to be due, be paid to Jesse Holdom, administra-
tor, upon demand, and that the further hearing upon the
objections to the balance of the account be continued.
From this order no appeal has been taken or prosecuted.
February 9, 1898, the probate court, after hearing all of
the parties in interest on the objections filed to said ac-
count, made the following order:

"'And now, on this day, pursuant to the order entered
herein on the 28th day of January, A. D. 1898, came on for
further hearing the objections filed herein to the final ac-
count of Joseph Salomon, administrator to collect *de bonis
non* of said estate, all parties being present in court, as
heretofore recited in the said order of January 28, afore-
said, and the court having diligently examined the said
account and heard oral and documentary evidence in re-
lation to the several items thereof, on the part of the said
administrator as well as said objectors, and also having
heard the arguments of counsel for the respective parties
in interest, and the court being now sufficiently advised
in the premises, finds there is no evidence in this cause
tending to show that said deceased left a widow him sur-
viving; that the evidence does show that said Joseph
Salomon has mismanaged said estate and its assets, sold
the note of Kaṭhrina Chatroop for $20,000, with its un-
paid interest coupons, long before maturity, and on or
about December 19, A. D. 1895, and appropriated the pro-
ceeds thereof, together with the other money appearing
from his account to have been by him received from
Albert Ellinger, the former administrator to collect of
said estate, to the individual use of himself and his at-
torney, Moses Salomon, and is not, by reason thereof,
entitled to any allowance for either administrator's com-
missions or attorney's fees, and that the same ought not
to be allowed, and that said Joseph Salomon, by reason
of the premises hereinbefore recited and the statutes of
this State governing like cases, is chargeable with in-
terest on all of said moneys from the time the principal

note of Kathrina Chatroop for $20,000 matured, viz., February 8, A. D. 1897.

" 'The court further finds that as to the items of eighteen hundred and sixty-five dollars ($1865) alleged to have been paid to one calling herself Jennie Wincox, as a widow's award, the item of one hundred dollars ($100) to Mrs. Stowell, and one thousand dollars ($1000) retained by said Joseph Salomon as and for his fees and commissions as administrator, and the item of seventeen hundred and fifty dollars ($1750) alleged to have been paid for fees of the attorney of said Joseph Salomon, be and the same are disallowed and the objections filed thereto sustained, and thereupon it is ordered that said items of $1865, $100, $1000 and $1750, aggregating the sum of $4715, be charged by said administrator against himself in a new account to be filed by him herein instanter, with interest thereon from February 8, A. D. 1897, at the lawful rate of five per cent per annum, and said administrator failing so to do, the court doth here state such account for him and charges said items, aggregating said sum of $4715, against him, said Joseph Salomon, together with interest thereon at the rate aforesaid, and doth find that said Joseph Salomon, as such administrator of said estate, has now in his hands of moneys belonging to said estate, and which are legally chargeable against him as such administrator, as follows:

Amount shown due by account filed and ordered by
     the court to be paid on January 28, 1898.........$24,826.37
Items to which objections have been sustained as
     aforesaid....... ............................. 4,715.00
Interest on both of said amounts, aggregating $29,-
     541.37, at five per cent per annum, from Febru-
     ary 8, 1897, to date......................... .. 1,477.06
         Making a total amount of.................$31,018.43

which the court finds said Joseph Salomon, as such administrator, is chargeable with, and which sum is rightfully and equitably due from him to the estate of said George Wincox, deceased. And as to the remaining ob-

jections filed herein, the same are hereby overruled and disallowed.

" 'It is therefore ordered by the court that said Joseph Salomon do pay forthwith unto Jesse Holdom, administrator of the estate of said George Wincox, deceased, the said sum of six thousand one hundred and ninety-two and 6-100 dollars ($6192.06), and that upon paying the same, together with said sum of $24,826.37 found due by order of January 28, 1898, aforesaid, and ordered thereby to be paid, he be discharged from further liability and the sureties on his official bond be released.

" 'Thereupon the said Joseph Salomon prays an appeal to the circuit court of Cook county as to the items of $1865, $100, $1000 and $1750, to which the objections were sustained as aforesaid, and the item of $1477.06 of interest, all of said items aggregating the sum of $6192.06, which is allowed on said Joseph Salomon giving bond, with sufficient surety to be approved by the court, in the penalty of twelve thousand three hundred and eighty-four dollars and twelve cents ($12,384.12), within twenty days from this date.'

"A trial was held in the circuit court without a jury, June 30, 1898, and the circuit court entered the following order:

" 'Now on this day, this cause coming on to be heard before the court without a jury, and the court having heard oral and documentary evidence on the part of all the parties to said cause, and also having heard the arguments of counsel for the respective parties in interest, and being now sufficiently advised in the premises, finds as a matter of law that the said item of $1865, alleged to have been paid to one calling herself Jennie Wincox as a widow's award, is not a proper credit in the account of the appellant Joseph Salomon, administrator to collect of the estate of George Wincox, deceased, and that therefore it is not necessary to hear evidence or pass upon the question of whether or not the said George Wincox

left a widow in the person of the alleged Jennie Wincox, or whether or not said administrator to collect has paid said sum, or any part thereof, to the alleged Jennie Wincox. The court declines to hear any evidence and pass upon the question whether Jennie Wincox was the widow of George Wincox.

" 'And the court further finds, from the evidence introduced, that said Joseph Salomon, appellant and administrator to collect of the estate of George Wincox, deceased, has mismanaged said estate and its assets, disposed of the note of Kathrina Chatroop for $20,000, bearing six per cent interest, with its unpaid interest coupons, long before maturity, at a discount, and on or about December 19, 1895, appropriated the proceeds thereof, together with other money appearing from his account to have been received from Albert Ellinger, former administrator to collect of said estate, to the individual use of himself and his attorney, Moses Salomon, and of the Chicago Architectural Iron Works, a corporation, in which they are officers and stockholders, and is not by reason thereof entitled to any allowance for either administrator's fees, commissions or attorney fees, and that the same ought not to be allowed, and that said Joseph Salomon, by reason of the premises hereinbefore recited and the statutes of this State governing like cases, is chargeable with interest on all of said moneys from the time the principal note of said Kathrina Chatroop for $20,000 matured, viz., February 8, 1897.

" 'It is therefore ordered by the court that the finding and judgment of the probate court of Cook county, Illinois, be and the same is in all respects affirmed, and the said appellant, Joseph Salomon, administrator to collect of the estate of George Wincox, deceased, is hereby ordered to account for and pay over to the appellee, Jesse Holdom, administrator of the estate of George Wincox, deceased, the following sums of money, viz.: $1865 alleged to have been paid to a woman calling herself Jen-

nie Wincox, $1000 claimed by said appellant for fees and commissions as administrator to collect, $1750 claimed to have been paid for attorney's fees, $100 alleged to have been paid to Mrs. Stowell, together with interest upon all of said items from February 8, 1897, to date, and also upon the sum of $24,826.37 ordered by the probate court of Cook county to be paid by said administrator to collect on January 28, 1898, and not appealed from, at the rate of five per cent per annum from February 8, 1897, to the date of said order, viz., January 28, 1898, said interest, all told, amounting to the sum of $1534.25.

" 'It is therefore ordered by the court that the said Joseph Salomon, administrator to collect of the estate of George Wincox, deceased, do forthwith pay unto Jesse Holdom, administrator of the estate of George Wincox, deceased, the said sum of $6249.25, together with the costs of this appeal in this behalf expended to be taxed, and that this order be certified to the probate court of Cook county.

" 'Motion for new trial overruled and exception. And the said Joseph Salomon excepts to the foregoing and prays an appeal. Thereupon the said Joseph Salomon prays an appeal from the judgment of this court charging him with said items of $1865, $100, $1000, $1750, and the said interest item of $1534.25, aggregating the sum of $6249.25, to the Appellate Court of Illinois within and for the First District thereof, which is allowed upon the said Joseph Salomon giving bond in the penal sum of $8000, with sureties to be approved by the court, within twenty days from this date, together with his bill of exceptions herein, within sixty days from this date.'

"The circuit court, on motion of the attorneys for Jesse Holdom, administrator, set the cause for hearing in advance of many other cases then upon the docket of said circuit court. Before the trial of said cause was commenced, appellant moved the court to refer the same to a master in chancery to take an accounting, which motion

was denied. The circuit court also declined to hear testimony upon the question as to whether one Jennie Wincox was the widow of deceased."

From the order or decree so entered by the circuit court on June 30, 1898, an appeal was taken to the Appellate Court, and said order or decree has been affirmed by the Appellate Court. The present appeal is prosecuted from such judgment of affirmance.

FRANK A. WHITNEY, (F. L. BROOKS, of counsel,) for appellant Joseph Salomon, administrator to collect.

BULKLEY, GRAY & MORE, for appellee Jesse Holdom, administrator in due course.

Per CURIAM: In deciding this case the Appellate Court delivered the following opinion:

"We shall not attempt to consider in detail, and severally, each of the numerous points presented by counsel for appellant or to pass upon them *seriatim*.

"It is contended on the part of appellant that the circuit court erred in setting this cause for trial out of its regular order. No statute is referred to and no case is cited to support this contention. The trial court may, in its discretion, for good and sufficient cause shown, direct that a case shall be advanced and tried out of the regular order in which it may be placed upon the docket. (Rev. Stat. chap. 110, sec. 17). Unless it appears that there has been an abuse of such discretion which works manifest injustice, it will not be interfered with by a reviewing court. (*Clark* v. *Marfield*, 77 Ill. 258). It does not appear in the case at bar that any injustice was done to appellant by advancing this case. * * *

"There is no such accounting in this cause as that it was error not to refer the case to a master. There was, in fact, no accounting. The only question upon the appeal was as to whether five specified items should be charged to appellant in his accounting. There was no

question as to the amount of each of said items or as to what they were for.

"One of the items included in this appeal, and which was not allowed to appellant in his accounting, is the sum of $1865, alleged by appellant to have been paid by him to Jennie Wincox as widow's award. Appellant was appointed administrator to collect. He was not authorized by order of the probate court to pay any or either of the items which he now claims should be allowed to him. He had no authority as to payment of widow's award or claims unless the law vested in him such authority. The statute concerning the appointment of administrators to collect says that the appointment shall be '*to collect and preserve* the estate of any such decedent until probate of his will or until administration of his estate is granted.' (Rev. Stat. chap. 3, sec. 11). The letters issued are that such an administrator may 'collect and secure' the property of deceased 'so that the same may be preserved' for those legally entitled thereto. (Sec. 12). The bond such an administrator is required by statute to give, is conditioned that he shall 'deliver to the person or persons authorized by the court, as executor or administrator, to receive the same,' all goods, etc., which shall come to his possession. (Sec. 13). Section 17 provides that 'on the granting of letters testamentary or of administration the power of such collector so appointed shall cease, and it shall be his duty to deliver, on demand, all property and money of the deceased which shall have come to his hands or possession * * * to the person or persons obtaining such letters; and in case any such collector shall refuse or neglect to deliver over such property or money to his successor when legal demand is made therefor, such person so neglecting or refusing * * * shall forfeit all claims to any commission for collecting and preserving the estate.'

"To what extent the probate court may authorize expenditures by an administrator to collect it is not impor-

tant here to inquire, for the reason that that court did not enter any order authorizing appellant to make any expenditures whatever. Neither under the statute nor by order of court was appellant authorized to disburse any part of the estate. He was, by his appointment and under the statute, just what he calls himself in his account filed in the probate court: an administrator to collect, and only that. When he assumed the right to pay out any money belonging to said estate he did so at his peril.

"Much stress is placed upon the fact that appraisers were appointed by the probate court who fixed the amount to be allowed as widow's award, which was approved by that court. But that was not an award to any particular person. It does not purport to be an award to said Jennie Wincox. Appellant must have known that the claim that she was the widow of said George Wincox was being contested by the heirs. It would appear from his affidavit that Moses Salomon, brother of and attorney for appellant, knew that the claim of said Jennie Wincox that she was the widow of said George Wincox was based upon an alleged common law marriage. But as appellant had no right or authority to pay a widow's award to anybody, it is, as affecting this case, immaterial whether said Jennie Wincox was or was not the widow of George Wincox. It follows that the trial judge did not err when he refused to hear testimony upon the question as to whether said Jennie Wincox was such widow.

"As we understand it, the claim of appellant to be allowed $1750 for attorney's fees is for that sum alleged to have been paid to Moses Salomon. We notice in this record that when the $20,000 note described in appellant's inventory was paid, $2000, part of the proceeds, was applied in part payment of a personal debt due from said attorney to H. H. Walker. The balance of $18,208.90 was paid by three checks, all payable to the order of said attorney, M. Salomon, and by him endorsed. Whether these

facts establish the crime of embezzlement, as urged by counsel for the administrator, we do not assume to determine. Said $20,000 note had not matured. Said attorney negotiated for the payment thereof and received all the proceeds. Appellant had no right or authority whatever to sell said note or accept payment thereof prior to maturity. This said attorney must, of course, have known to be the law. There was no error in refusing to allow appellant said attorney's fees.

"It seems that the whole amount of the proceeds of said note, except the $2000 paid on account of M. Salomon's personal indebtedness, viz., $18,208.90, went to the corporation known as the Chicago Architectural Iron Works. Of that corporation said attorney, Moses Salomon, is president, appellant Joseph Salomon is vice-president, and Leo Salomon, another brother, is secretary and treasurer. All three are directors and stockholders. We do not find from the record that appellant holds any obligation executed by said corporation for the re-payment of said sum of $18,208.90, or any part thereof, or any security therefor. Neither does it appear that he holds any note or security for the $2000 paid on account of an individual debt owing by said attorney, Salomon, or that said attorney has ever executed any note or other evidence of indebtedness, or given any security for the payment of said sum to appellant or to said estate. While such facts would not affect the question as to the legal liability of appellant, they have a bearing upon the question of allowing commissions.

"It was not error to disallow the claim of appellant, as administrator, for $1000 commissions. To have allowed him commissions upon money wrongfully collected and appropriated, in the manner shown by this record, would have been wrong. The statute provides (chap. 3, sec. 17,) that 'in case any such collector shall refuse or neglect to deliver over such property or money to his successor when legal demand is made therefor' he shall

forfeit all claims to any commissions. Demand was made upon appellant by his successor and appellant neglected to deliver or pay over as the statute required. He thus forfeited all claim to any commissions.

"The same record of the probate court which shows the appointment of appellant also shows that the order theretofore entered allowing the claim of Mrs. Stowell for $100 was vacated and set aside, and yet it is here contended that appellant has paid that claim and that it should be allowed to him. Attorney for appellant, in his printed argument, refers to the pages in the record showing that this claim was filed and afterward allowed, but fails to note the fact that the order allowing such claim had been vacated. Appellant should not have paid it, and such payment cannot be allowed in his accounting.

"There was no error by the trial court in disallowing each and every of the four items alleged to have been paid out by appellant, viz.: For widow's award $1865, commissions to appellant $1000, attorney's fees $1750, and claim of Mrs. Stowell $100. Neither was there any error in charging appellant interest amounting to $1534.25.

"It is stated by attorney for appellant in his printed argument, and it is emphasized by being there printed in italics, that 'not one cent has been unaccounted for.' It seems to be the idea of the writer of the argument for appellant that because it is shown when the appellant permitted a portion of said estate to be abstracted, and by whom and how, and when he had illegally used and misappropriated the balance, therefore he was not guilty of any culpable misconduct. * * *

"The judgment of the circuit court is affirmed."

We concur in the foregoing views expressed by the Appellate Court and in the above conclusion reached by that court. Accordingly, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*