FREDERICK W. G. MAY, guardian, *vs.* JOSEPHINE MAY & others.

SAME *vs.* SAME.

A man of wealth and having no family dependent on him, under guardianship as insane, should be allowed those luxuries which he desires and can enjoy, which are unobjectionable in themselves and would be proper and reasonable expenditures for a sane man in a similar position.

A guardian of an insane man whose estate was worth over $200,000 spent four hours three times a week in visiting and dining with his ward, and superintending the management of his house and grounds; and the ward's spirits and condition were much improved by the visits. *Held*, that a monthly charge of $100 for personal services, besides a commission of five per cent. on the income collected, should be allowed to the guardian; but that an additional charge of $100 for attending court should be disallowed, as should also a charge of $200 for attending the ward on two journeys of a fortnight each, which were undertaken partly on account of the guardian's own business.

The additional compensation, if any, allowed to a guardian for changing investments of his ward's property, or making repairs thereon, should not be by way of commissions on the amount invested or expended.

A guardian who makes up his accounts monthly may charge his ward's estate each month with his commissions on the amounts collected in that month, and with a month's interest on a balance from the preceding month in his own favor, and may carry the balance to the next month.

THE FIRST of these cases was an appeal by Josephine May Ernestine May, James B. Bradlee and his wife Mary P. Bradlee

George P. May, and Edwin May, next of kin of Frederick May, an insane person, from a decree of the judge of probate, rendered March 22, 1870, authorizing Frederick W. G. May, his guardian, to build a stable on the estate of the ward at an expense not exceeding $10,000, and to sell personal estate of the ward sufficient to defray the expense. The reasons of the appeal were, that the expenditure was extravagant, and was not needed for the comfort of the ward.

THE SECOND CASE was an appeal by the same persons from a decree of the judge of probate, rendered February 8, 1870, allowing the third account of the guardian. The reasons for the appeal were, that the amounts charged in the account for the services, commissions and expenses of the guardian, in the care of the per-- son and property of his ward, were excessive and unreasonable.

Both appeals were heard in June 1871, before *Ames*, J., who reported the evidence and all questions of law therein for the determination of the full court. The following is the substance of the report :

Many witnesses were called and examined by the appellee, and cross-examined by the appellants. No witnesses were called by the appellants.

It appeared that in 1844 Joseph Ballard was appointed guar- lian of Frederick May, and by the inventory then filed by him the ward's property amounted to $92,748 ; that in 1862 Ballard was removed, and the next year the appellee was appointed guardian, and by the inventory then filed the ward's property amounted to $202,025 ; that the appellee filed his second account on September 1, 1865, which showed a balance due to him from his ward of $8510, and was duly allowed ; that the account now in question was filed on July 1, 1868, thus covering a space of thirty-four months, and showed a balance due to the guardian of $15,382 ; that the amount due to him remained about the same at the time of the hearing, and the debts then due from the ward's estate to other persons amounted to about $12,000 ; that the property of the ward, as inventoried at the time of the filing of this account, was $207,977, including a parcel of real estate of six acres in Medford, on which the ward lived, which was inventoried at

$40,000, its cost, and would now sell for only $25,000 or $30,000, but including also other property which was worth more than the inventoried value; that the annual income of the ward, during the time covered by this account, was about $14,000 a year, from which repairs, taxes, insurance, and interest on debt were to be deducted; that the ward was a bachelor, about sixty-five years old, not fit to take care of himself or his property, but of peaceable disposition, of considerable intelligence, and very fond of animals, especially of horses; that his principal amusement was driving; that the stable at present on his estate was too small to hold his horses and carriages, and wholly out of keeping with his house and the rest of his establishment; that the stable which it was proposed to build was to be of brick, covering 2220 square feet of ground, and twenty-five feet high to the ridge pole, and would cost about $10,000; that it would increase the value of the estate, though not to the extent of its cost; that the ward was intensely interested in having the new stable built, and complained bitterly of his present stable; that he was not on terms of intimacy or even friendship with any of his next of kin; that Edwin May, one of the appellants, was dead; and that the other appellants were persons of large fortune, except George P. May, who had a wife and two children and a settled income of $2000 a year.

The account in question showed that the gross amount collected during the time covered by it was $39,658, and the appellee charged a commission of five per cent. thereon, amounting to $1982.90, as appeared by the first item in a statement made up from the account.

The appellee, in the account, charged $100 a month for personal services, as appeared by the fourth item in said statement. It appeared that he visited and dined with his ward three times a week, travelling from Boston to Medford and spending four hours each time, one of which was passed in the travelling; that the ward had a housekeeper at a salary of $1000 a year, who took care of the house, but the appellee took charge of all out-of-door matters and the affairs of the ward generally; and that the spirits and mental condition of the ward had greatly improved while he had been under the guardianship of the appellee.

The appellee charged $100 for attendance at the probate court and at this court, and also $200 for attending his ward on two journeys, of a fortnight each, one in September 1866, and the other in June and July 1867, as appeared by the fifth item in said statement. The appellee testified that he took these journeys for business of his own ; that the ward wanted to go with him ; that had he gone on his business alone he would not have been away more than two or three days each time ; and that he extended the trips on his ward's account.

The appellee charged in his account $114 as a commission of three per cent. on a sale of real estate for $3800, and investment of the proceeds, as appeared by the second item in said statement.

The account showed that during the time covered by it $20,084 were spent in remodelling the ward's house, and $2702 in repairs on other estates, and on these two sums the appellee charged a commission of five per cent., amounting to $1139.30, as appeared by the third item in said statement.

The account was made up monthly, the appellee crediting the ward's estate with the amounts collected by him, and charging it with the amount expended for the ward, and also with his own commissions for the monthly collections, and a month's interest on the balance due to him from the estate at the end of the preceding month. The balance, which was always in his favor, was carried to the next month.

*T. H. Sweetser & G. W. Phillips*, for the appellee.

*E. D. Sohier & C. A. Welch*, for the appellants.

AMES, J. The ward in this case is an unmarried man, about sixty-five years of age, and the owner of a large amount of property, yielding an income of at least $12,000 annually. Nobody can be said to be dependent upon him, or to have an interest in the final disposition of his estate, in any such sense as to need any special or peculiar protection from the law. His immediate relatives are all of them persons of large property, and he does not appear to be connected with any of them by any close ties of intimacy or friendship. He is put under guardianship, partly for the constant direction and care of his personal habits, and atten-

tion to his wants, and partly because he has not sufficient intelligence for the transaction of business and the management of his property. The guardian is appointed for the welfare, comfort and security of the ward ; and not for the increase of the estate in his hands by accumulations from the income, in order to enlarge the wealth of remote or collateral relatives who may ultimately succeed to the inheritance It is no part of his duty to diminish the reasonable comforts of his ward, or to prevent him from enjoying such luxuries, or indulging such tastes, as would be allowable and proper in the case of a man similarly situated in other respects, but in the full possession of his faculties.

In *Oxenden* v. *Compton*, 2 Ves. Jr. 69, Lord Eldon says that in the management of the estate the guardian should attend " solely and entirely " to the interest of the owner, without looking to the interest of those who, upon his death, may have eventual rights of succession ; " and nothing could be more dangerous or mischievous than for him to consider how it would affect the successors," as the ward is the only person he is bound to take care of. He adds that the court will always shut out of view all eventual interests, and will consider only the immediate interests of the person under its care. To the same general effect are the other cases cited by the appellee, of *Ex parte Baker*, 6 Ves. 8 ; *Dormer's case*, 2 P. W. 262 ; *Ex parte Whitbread*, 2 Meriv. 99 ; *In re Persse*, 3 Molloy, 94 ; *Kendall* v. *May*, 10 Allen, 59.

The case finds that the ward is fond of domestic animals ; that the keeping and use of horses is the principal comfort and enjoyment of his life, if not absolutely necessary to his health ; and that the stable accommodations which he now has are scanty, and not at all in keeping with his dwelling-house and domestic establishment generally. Under such circumstances, the question is not whether the proposed outlay for the construction of the new stable is strictly judicious and expedient in an economical sense ; nor whether a trustee, acting for the benefit of minors, and bound to increase the fund in his hands by all proper means, would be justified in incurring such an expenditure ; but whether it would be unreasonable and extravagant to allow such an investment from this particular estate. We do not think that when the man

agement of the property is taken out of the ward's hands, for his own good, the law intends to deprive him of the enjoyment of his wealth, except so far as the necessity of the case absolutely requires. We see no reason why the wishes and tastes of the ward may not properly be considered in such cases, provided the expenditure is for a purpose that is unobjectionable in itself and can be afforded without material inconvenience to his financial position, especially where there is neither wife nor child whose interests can be affected unfavorably. It could not be said to be an unreasonable expenditure for a man of like fortune and circumstances not under guardianship; and we think that the fact of guardianship furnishes no sufficient ground, in the present case, for its disallowance. The decree of the judge of probate in this respect is therefore affirmed.

With regard to the guardian's account, the charge of five per cent. upon the gross amounts collected is not objected to by the appellants. The charge of one hundred dollars per month, for the services of the guardian in the personal charge of the ward, although apparently somewhat large, is in our opinion justified by the evidence. This item, as we understand it, does not apply to the services of the guardian in the management of the property. The evidence satisfies us that the visits of the guardian to the ward, which were very frequent and occupied a large portion of the guardian's time, were of great benefit and advantage to the ward, have greatly improved his condition, and are not overcharged in the guardian's account. But these two items of charge appear to us to furnish a full compensation for the ordinary duties of the trust, and for the time devoted to personal attentions and services directly to the ward. We disallow therefore the charges for extra attendance of the guardian at court and for his personal attendance upon the ward in two journeys.

With regard to the sale of real estate and the reinvestment of its proceeds, and also with regard to the remodelling of the dwelling-house and the repairs of other estates, we are of opinion that the allowance of compensation in the shape of a commission upon the amount expended is objectionable. It is contrary to public policy, and in conflict with the true nature and purpose of such

trusts, that a guardian should be a gainer by frequent changes of investment, or that his compensation should be increased by increasing the amount of expenditures on the ward's account. Any specific services, not included in the ordinary range of the guardian's duties, may be charged in his account, and it will be the duty of the judge of probate to make such reasonable allowance for them as their importance and difficulty might require. The true principle would be, adequate reward according to the circumstances of the case. *Post* v. *Jones,* 19 How. 150. We should however be very unwilling to sanction the practice of putting that compensation in the form of a commission upon the amount expended or reinvested, and therefore we cannot allow these charges in their present form.

As the guardian has adopted a system of monthly accounts, carrying the balance forward every month to the next succeeding account, it does not appear to us that his monthly charge of interest is open to objection.

*Decree reversed as to all items except the first and fourth.*