The People of the State of Illinois for use of Dime Savings & Trust Company, Conservator of the Estate of Katie R. Birket, Insane, Appellee, v. Arthur T. Birket, Sr. et al. Detroit Fidelity & Surety Company, of Detroit, Michigan, Appellant.

Gen. No. 8,046.

Opinion filed August 15, 1929,

George W. Hunt and J. Edward Radley, for appellant.

Hunter, Kavanagh & McLaughlin, for appellee.

Mr. Justice Jett delivered the opinion of the court.

This is an appeal by the Detroit Fidelity & Surety Company from a judgment entered in the circuit court of Peoria county, for damages in the sum of $7,500, in an action of debt upon the bond of Arthur T. Birket, Sr., as conservator of Katie R. Birket, insane, and signed by the appellant, Detroit Fidelity & Surety Company of Detroit, Michigan, as surety on said bond. The Dime Savings & Trust Company, a corporation, was appointed conservator, successor to Arthur T. Birket, Sr., who was removed by the order of the probate court of Peoria county, on February 2, 1927. The suit is instituted in the name of the People of the State of Illinois, for the use of the estate of Katie R. Birket, insane.

The declaration is in debt for the face value of the bond, to wit, $7,500, and charges that Arthur T. Birket, Sr., was appointed and qualified as the conservator of Katie R. Birket, insane, on February 27, 1902; that thereafter at the December term of said court, 1924, his original bondsman, or surety, withdrew as such surety and a new bond was executed and approved by the probate court of Peoria county on the 23rd day of December, 1924, wherein Arthur T. Birket, Sr., was principal and the Detroit Fidelity & Surety Company was surety, which bond was in the penal sum of $7,500, dated November 24, 1924, conditioned that Arthur T. Birket, Sr., should faithfully discharge the office and trust of such conservator according to law, and should make a true inventory of all the real and personal estate of the said ward that should come to his possession or knowledge and file the same with the probate court of Peoria county, at the time required by law and

manage and dispose of all of said estate according to law, and for the best interest of said ward, and faithfully discharge his trust in relation thereto, and to the custody of Katie R. Birket, and render an account on oath of the property in his hands, including the proceeds of all real estate that might be sold by him, for, in and by, the management and disposition of all said estate within one year after the execution of said bond, and at such other times as should be required by law or directed by the court, and upon removal from office, the restoration of said ward, or at the expiration of his trust, settle his account in said court, or with the ward, as the case might be, and pay over and deliver all the estate, title, papers and effects remaining in his hands, or due from him on such settlement, to the person or persons lawfully entitled thereto, then said bond should be void, otherwise to remain in full force and virtue.

It is then averred that Arthur T. Birket, Sr., continued in said office until February 2, 1927, when he was removed by the probate court of Peoria county, and the appellee, Dime Savings & Trust Company, appointed his successor; that Arthur T. Birket, Sr., did not faithfully discharge said office according to law, but neglected and refused so to do, to the injury of the plaintiff.

In the declaration four breaches are assigned: (1) Arthur T. Birket, Sr., did not render true and correct accounts of his acts and doings to the probate court aforesaid; (2) he did not, as ordered and directed by the court, settle his accounts in said court, upon his removal as such conservator; (3) he wholly failed, neglected and refused to pay over the money and property of said ward in his hands, due from him on such settlement, to the plaintiff, as his successor in trust; and (4) that after his said qualification under his bond, dated November 20, 1924, divers rents accru-

ing from the real estate of the said Katie R. Birket, amounting to a considerable sum of money, to wit, $7,500, came to the hands of the said Arthur T. Birket, Sr., as such conservator prior to the date of his removal, to wit, February 2, 1927, yet the said Arthur T. Birket, Sr., not regarding his duty as such conservator during that time, converted and disposed of said rents to his own use, and has neglected and refused, and still neglects and refuses to pay over to the plaintiff the amount of said rents.

The declaration then concludes by charging damages in the sum of $8,000, by reason of the four respective breaches assigned.

The appellant, the said Detroit Fidelity & Surety Company, craved oyer of the bond, which was produced, and for a plea set the bond and all of its conditions out *in haec verba,* and there averred that at the time of its approval on December 23, 1924, by the judge of the probate court of said county, a current report of Arthur T. Birket, Sr., was and had been on file in said court since February 27 prior thereto, and was at the time of the approval of the bond in question, unadjudicated, and showed a balance for the year ending February 27, 1923, of $1,583, to be cash on hand; that said conservator made no accounting to the probate court of Peoria county since February, 1924, prior to the execution of the bond in question; that at the time the bond in question was executed, there was in fact no money or cash or checks or the equivalent of money, in the hands of said conservator, but that all receipts of money as rents or otherwise which came to the hands of Arthur T. Birket, Sr., prior to the execution of said bond on the 20th day of November, 1924, had been disbursed, paid out or used by said conservator for his own use as charged in said declaration, by reason whereof, on the said date of the execution of said bond, there was no money or the equivalent of money in the hands of said conservator; that by reason

of one of the conditions of said bond, said Surety Company is not liable in any form for any acts of said conservator prior to November 20, 1924, for failure of said conservator to account for the moneys or property coming into his hands belonging to said estate, prior to November 20, 1924, which were not in the hands of said conservator on said date, or came into his hands subsequent thereto, and prior to the bringing of this suit. The plea closes with the usual verification.

A jury was waived and the cause was heard by the court upon a stipulation of facts. Judgment was rendered against appellant, not only for moneys received by the conservator since the filing of the new bond, but also moneys chargeable to him prior to the filing of said bond. It is this ruling of the court of which complaint is made. It is claimed by the appellant Surety Company that it is not liable for any money except that received by the conservator after November 20, 1924.

It is insisted the court erred in holding that the appellant, under the bond in question, was liable for the sum of $4,371.59, used by Birket prior to November 20, 1924, and in holding the proposition of law submitted by appellee in this respect to be controlling and in refusing to hold the proposition of law tendered by the appellant on this question.

At the time the bond in question was executed and accepted there was on file, but unapproved in the office of the clerk of the probate court, Birket's annual report as conservator, dated February 27, 1924, and purporting to be a report for the year of February 27, 1923, to February 27, 1924. In said report Birket charges himself with carrying forward from his previous report a balance of $1,583, and as having on hand, on the date of said report, to wit, February 27, 1924, the sum of $3,952.31.

The stipulation on which this cause was tried shows that on the date of the filing of the report, Birket did not have this money "in a separate account as conservator of said estate but had theretofore used it for his own use, all of which was unknown to the Detroit Fidelity & Surety Company, of Detroit, Michigan, unless they were bound to know the same before the execution and delivery of the bond in question; that for the purpose of this litigation it is agreed by and between the parties hereto, that the receipts from November 20, 1924, to February 27, 1925, shall be considered as equal to one-third of the annual receipts, or $533.33." It cannot be denied that although Birket had used this money, he recognized his obligation to the estate by charging himself therewith in the report filed February 27, 1924. We are not unmindful of the fact that it is the contention of appellant, that by having used this money for his own purposes, although admitting his liability, therefore the surety, by reason of the peculiar phrase inserted in the bond, is not bound as surety for a true accounting by the principal of those funds. Although he had used the funds prior to the date of the execution of the bond for his own purpose, he was not in default; he had filed an account charging himself therewith; he admitted he owed that sum to the estate of his ward; an accounting and settlement had not been required of him at the time of the taking of a new bond, nor for a long time prior thereto. At any time prior to the time he should be called upon to make settlement, he could have replaced the money in the account of his ward, which he had theretofore used and would never have been in default. A new bond having been given without requiring an accounting, he, in all probability, would not make another report until the date of his regular annual report would come due, that would be February 27, 1925, three months after the execution of the bond on which the appellant is surety.

If, at the date last mentioned, February 27, 1925, he had been compelled to make a settlement of his account, and was unable to produce the money due to his ward, then, for the first time, would he have been in default, but a conservator is not in default until a demand is made upon him and he fails or is unable to comply with the demand.

At common law, a conservator, guardian, or administrator was permitted to use the funds of his ward or of the estate for his own purposes, being bound only to make a faithful accounting when an accounting became due. Cooley's Blackstone, Second Revised Edition, 1879, Vol. 1, Book 2, chapter 5, page 371.

The obligation of a conservator or guardian to keep the funds of his ward in a separate account and at interest is one created by statute.

The section defining embezzlement by a conservator reads as follows: "Whoever, being the administrator of the estate of a decedent, or the executor of a last will, or guardian of any minor, conservator of any idiot, distracted person, drunkard, spendthrift or insane person, or trustee or other person acting in any fiduciary capacity, without good cause, fails or refuses, when legally required by the proper person or authority, to account for or pay over to such person or persons as may be lawfully entitled to receive the same, any money, choses in action, or other property which may have come into his hands by virtue of his office, duty or trust, shall be deemed guilty of larceny." Cahill's St. ch. 38, ¶ 194; Smith-Hurd Ill. Rev. Stat., ch. 38, ¶ 216.

The Criminal Code creating and defining the crime of embezzlement, is divided into numerous sections, each of which defines what acts of certain persons, classes of persons, or officials shall constitute the crime. The general sections of the Embezzlement Act do not require a demand, before a wrongful use may consti-

tute embezzlement, but the section of the statute referring to embezzlement by conservators, specifically defines embezzlement as a failure "when legally required by the proper person or authority, to account for or pay over." There are analogous holdings in other classes of cases that appear to be suggestive of what the rule should be, in view of the state of the record, in this cause.

In *School Trustees v. Arnold,* 58 Ill. App. 103, the court held that where a public officer succeeds himself in office, his bondsmen on his second bond are liable for the amount on hand at the termination of his first term, and that the obligation of the first bond is not prolonged by a re-election of the principal to office.

In *Doll v. People,* 145 Ill. 253, it was held that where a county treasurer, on going into office, charges himself with a sum of money upon his books, as received from his predecessor, and reports the receipt thereof to the county board, both he and his sureties, when sued on his bond, will thereby be precluded from denying that fact and from showing that such sum was not paid to and received by him from his predecessor, and that the rule is the same whether the officer is his own successor or succeeds another.

In *Morley v. Town of Metamora,* 78 Ill. 394, and in *Cawley v. People,* 95 Ill. 249, the court held that if a public officer is his own successor, the sureties on his bond for his second term are liable for funds he reports as in his hands at the expiration of his first term.

Where an officer is re-elected and becomes his own successor, and at the commencement of his second term, reports a certain sum in his hands, and gives bond with sureties to account for and pay over the moneys coming to his hands during the term, his securities, when sued, will be responsible for the sum so reported in his hands and will not be allowed to show the defalcation in fact occurred during the previous

term. *Swisher v. Fidelity & Deposit Co. of Maryland,*
164 Ill. App. 243–247; *Roper v. Sangamon Lodge,* 91
Ill. 518; *Cowden v. School Trustees,* 235 Ill. 604; *Town
of Cicero v. Grisko,* 240 Ill. 220; *School Trustees v.
Cowden,* 240 Ill. 39; *Town of Cicero v. Hall,* 240 Ill.
160; *Ladd v. Board of Trustees,* 80 Ill. 233.

Furthermore, the statute provides a method whereby
a surety on a new bond of a conservator may be pro-
tected against liability for acts of the conservator
prior to the giving of the new bond.

Paragraph 18 of chapter 103, Cahill's St., Smith-
Hurd's Rev. Stat., ch. 103, ¶ 18, provides: "That,
whenever any surety on the bond of any guardian, con-
servator of any idiot or insane person, or the trustee
of any fund or property appointed by any court, or the
heir, executor or administrator of such surety, desires
to be released from any further liability upon any such
bond, he may petition the court in which said bond is
filed, for that purpose, and upon notice being given to
such guardian, conservator or trustee in such manner
as the court may direct, the court shall compel such
guardian, conservator or trustee, within a reasonable
time to be fixed by the court, to appear and settle his
accounts and file in such court a new bond with such
penalty and security as may be approved by the court,
which being done, the surety may be discharged from
all liability on such bond."

This section of the statute is for the benefit, not
only of the ward, but for the purpose of releasing the
old sureties on a former bond and it, as well, protects
the new sureties on the new bond being given, for at
the time of a complete accounting, the surety is in-
formed exactly of the assets on hand for which he at
once assumes liability. It appears that the appellant
did not see fit to take the method provided by statute,
but instead thereof relied upon the last account filed
by Birket of his acts and doings on February 27, 1924.

Appellant speaks of Birket's converting the funds of his ward, prior to the date of the execution of the bond. It will be remembered that this cause was submitted upon a stipulation of facts, and the stipulation does not show that Birket converted the money, but that it uses the following language: "The said sum shown as cash balance 'carried forward' and 'balance due' as well as balance due and on hand November 20, 1924, were not held by said Arthur T. Birket, Sr., in a separate account as conservator of said estate, but had theretofore been used by him for his own use."

Appellant is not in a position to insist that Birket was guilty of conversion prior to November 20, 1924, for the reason that he could not be said to have been a defaulter from anything shown in the record prior to the time of the filing of the bond by appellant.

It is also insisted that the court erred in holding that the appellant, under the bond in question, was liable for the sum of $1,375.20, as interest on annual balances, and in holding the proposition of law submitted in this respect to be controlling of the issues as to this item of damage.

Relative to the question of interest, the stipulation on which the case was tried among other things contains the following: "It is further stipulated and agreed that said schedules do not show a charge of interest on annual balances, which is to be considered by the Court and if found to be a proper charge against the defendant, Detroit Fidelity and Surety Company of Detroit, Michigan, then such annual balances, as the court may find due, shall bear interest at the rate of 5% from the date of such annual balances to the date of entering judgment herein."

Paragraph 18, chapter 86, Cahill's St.; Smith-Hurd Rev. Stat., ch. 86, ¶ 18, provides not only that a conservator shall keep his ward's money at interest but that: "The conservator shall be chargeable with inter-

est upon any money which he shall wrongfully or negligently allow to remain in his hands uninvested, after the same might have been invested.''

*Hough v. Harvey,* 71 Ill. 72, is a case where an executor was charged with interest. In its opinion at page 77 the court said: ''There is no pretense that appellant (an executor) put the money out upon interest and received that rate, or that it was put to use in trade or investment of appellant. By the terms of the will, appellant was authorized to sell any real estate belonging to the testator at his death, and invest the proceeds for the benefit of devisees, and, by statute, he was required to render annual accounts to the county court. He rendered none after 1863, and failed to invest the proceeds of the sale of land. Under these circumstances, he was chargeable with interest at the legal rate, simple or compound.''

In Schouler on Wills, Executors and Administrators (5th Ed.), vol. 2, sec. 1538, the author says: ''Chancery and probate courts in modern practice will compel executor or administrator to charge himself in his account, with interest and in gross instances with compound interest, where he has abused his trust . . . In other words, all profits made with trust moneys belong to the trust; and furthermore, an equitable failure to make profit for the estate out of funds which should have been made productive is a waste.''

Appellant bases his contention upon section 2 of chapter 74, Cahill's St., being the chapter on the question of interest, and cites certain cases in support of his contention. Appellant overlooks the fact, that the specific statute, heretofore cited, being paragraph 18 of chapter 86, Cahill's St., not only specifically makes the charge of interest, but specifies that it shall be charged, not from the date of any accounting, but from the time when the money might have been invested, the statute, as heretofore stated, being that, ''the con-

servator shall be chargeable with interest upon any money which he shall wrongfully or negligently allow to remain in his hands uninvested, after the same might have been invested.''

The next question arising on the record is, whether or not the court properly refused to allow the defaulting conservator and his surety to·take credit for compensation, and did the court err in holding as it did on the proposition of law on that point, and did the court err in its findings of facts in this particular. A conservator who has misappropriated money of his ward and fails to make an account or settlement, is not entitled to receive commissions or fees for services.

Numerous cases hold that compensation may be refused if the administrator has been guilty of wilful default or misconduct in the administration of the estate. *Whittemore v. Coleman,* 239 Ill. 450; *In re Estate of Wincox,* 186 Ill. 445; *Whittemore v. Coleman,* 144 Ill. App. 109. Since the appellant admits that the report of the conservator filed February 27, 1924, had never been approved by the court, the count for compensation claimed in that report, and all compensation since that date, was properly denied in the accounting and judgment of the trial court.

In conclusion, we are of the opinion that bonds of the nature and character of the bond in question are given for the benefit of the ward and that the bond in this cause, notwithstanding its additional provision, is sufficient to charge its maker with liability for all funds for which the conservator was responsible to the ward on the day of the execution and approval of the bond. The conservator had not been exonerated because of his defalcation. His duty to his ward and obligation to her were the same whether he had misused her property or not.

There was a report on file upon which no action had been taken by the court and which admitted that the

conservator had in his hands a large sum of money. With these facts being a matter of record, the appellant, the Surety Company, entered into its obligation and ought not now to be heard to say that the report is untrue and that the conservator had embezzled the funds prior to November 20, 1924.

We conclude, therefore, that no reversible error was committed in the trial of the cause and the judgment of the circuit court of Peoria county will be affirmed, which is accordingly done.

*Judgment affirmed.*