METCALFE *v.* NICHOL.

5-766                                                    283 S. W. 2d 853

Opinion delivered November 21, 1955.

*Sam Rorex,* for appellant.

*Clayton Farrar* and *Ray S. Smith, Jr.,* for appellee.

ED. F. McFADDIN, Associate Justice. This appeal involves the guardianship of General Metcalfe. The in-

herent question is what is for the best interest of the ward: the questions actually posed relate to (a) the qualifications of the guardian, (b) requirements as to notice of annual reports, and (c) correctness of fees allowed the guardian and her attorney.

General Metcalfe is a retired officer of the United States Army; and the appellee, Mrs. Marjorie Nichol, is his step-daughter. General Metcalfe has no children or descendants; and the appellant, who lives in Seattle, Washington, is his only brother and nearest blood relative. General and Mrs. Metcalfe were married when Mrs. Marjorie Nichol was a small child, and the General has stood *in loco parentis* to her and she *in loco filiae* to him. Colonel Nichol was an officer under General Metcalfe when the Colonel and Mrs. Nichol were married. In 1950, Colonel Nichol was stationed at the Army-Navy Hospital in Hot Springs when General Metcalfe retired; and the General and Mrs. Metcalfe moved to Hot Springs to live with Colonel and Mrs. Nichol. Both General and Mrs. Metcalfe became victims of senility and, with their consents — in apparently lucid intervals — the Probate Court of Garland County in March, 1951, appointed Mrs. Nichol guardian of the persons and estates of Mrs. Metcalfe and General Metcalfe. Mrs. Metcalfe is now deceased; and this case relates only to the guardianship of General Metcalfe, who has been in Fort Roots Hospital in Little Rock from 1951 until and after the time of the hearing from which comes this appeal.

At the inception of the guardianship, General Metcalfe's estate, largely in stocks and bonds, was inventoried and valued at $90,235.96. Mrs. Nichol filed her first annual account in March, 1952, and it was approved by the Court. She filed her second annual account in March, 1953, which was likewise approved by the Court. In March, 1954, she filed her third annual account; and thereupon the appellant resisted the account and claimed: (a) that Mrs. Nichol was never qualified to be guardian of General Metcalfe; (b) that the approvals of the first and second annual accounts were void because no notice

had been given to the appellant; and (c) that the allowances to the guardian and her attorney were excessive. The Probate Court held against the appellant on all points; and this appeal has resulted.

I. *Mrs. Nichol's Qualifications as Guardian.* Colonel and Mrs. Nichol were living in Hot Springs on the grounds of the Army-Navy Hospital, and General and Mrs. Metcalfe were living with them at the time Mrs. Nichol was appointed guardian of General Metcalfe, as heretofore stated. The appellant says that the domicile of Colonel Nichol is the domicile of Mrs. Nichol (*Collum* v. *Hervey,* 176 Ark. 714, 3 S. W. 2d 993); and that Colonel Nichol was here in Arkansas as an Army Officer and therefore not domiciled in the State within the purview of our holdings in such cases as *Kennedy* v. *Kennedy,* 205 Ark. 650, 169 S. W. 2d 876, and *Mohr* v. *Mohr,* 206 Ark. 1094, 178 S. W. 2d 502. These cases relate to *domicile for divorce purposes* and not to mere residency for guardianship purposes. In § 57-606, Ark. Stats., in discussing venue for the appointment of a guardian, the Statute says that the venue shall be ". . . (1) in the County of this State which is the domicile of the incompetent; or (2) if the incompetent is not domiciled in this State but resides in this State, then the County of his residence; . . ." The quoted language shows that the framers of our Probate Code (Act 140 of 1949) recognized the clear distinction between *domicile* and *residence.* Then in the next section of the Probate Code (§ 57-607, Ark. Stats.), in stating the qualifications of a guardian, the language is: "A natural person, a resident of this State . . . is qualified to be appointed guardian of the person and of the estate of an incompetent. . . ." The use of "resident"—in the section immediately following the one using the word "domicile"—shows that the Legislature knew and appreciated the difference between domicile and residence in prescribing the qualifications of a guardian to be merely a resident. Sub-section (e) of § 57-607, Ark. Stats., further emphasizes this distinction by stating that a nonresident natural person ". . . possessing the qualifi-

cations hereinbefore enumerated (except as to residence) who has appointed a resident agent to accept service of process in any action or suit with respect to the guardianship and caused such appointment to be filed with the Court . . . is qualified for such appointment."[1]

We hold that Mrs. Nichol was legally qualified as a resident to become guardian of her step-father, General Metcalfe. Furthermore appellant's attack on Mrs. Nichol's qualifications may be a collateral attack at the present stage of the proceedings (see *Sharp* v. *Himes,* 129 Ark. 327, 196 S. W. 131; and *Swindle* v. *Rogers,* 188 Ark. 503, 66 S. W. 2d 630); but we do not rest our opinion on that point.

II. *Approval of the First and Second Annual Reports.* Appellant complains that no formal copies of these reports were ever served on him, and claims such service was required by § 57-611(5), Ark. Stats. The Veterans Administration of the United States received and approved each of the accountings; and there was no effort at concealment. Appellant does not claim that he would have suggested any changes if he had been served with a legal summons. His only complaint is that he dislikes to think of his brother being confined in the Hospital at Fort Roots.

Assuming, without deciding, that appellant was entitled to receive notice of such reports, the facts show that he had *knowledge* by having written for and received copies of the reports from the Clerk of the Probate Court. Furthermore, there are in the evidence numerous friendly letters from Colonel Nichol to appellant, telling him of General Metcalfe's condition and of visits made by the Nichols to Fort Roots to see the General, and of auto rides, shopping trips and dinners to which the Nichols had General Metcalfe, with the approval of the staff of the Fort Roots Hospital. General Metcalfe stood *in loco parentis* to Mrs. Nichol, and she

---

[1] Later when Colonel Nichol was transferred to an Army Post in Texas, Mrs. Nichol attempted to comply with Subsection (e) by appointing her attorney, Honorable Clayton Farrar, as attorney for process.

certainly stood *in loco filiae* to him, because he was living in her home as her step-father at the time of the guardianship. Her love for him is attested by the letters and other matters in the file. On the other hand, until this guardianship, the appellant had seen General Metcalfe only at rare intervals and his visits were years apart. We conclude that the Trial Court was correct in refusing appellant's contention as regards the first and second annual reports.

III. *Third Annual Report.* When Mrs. Nichol and her attorney filed this report, they caused a copy to be sent to the appellant; and he complains that the fees allowed Mrs. Nichol and her attorney are too large. These were $1,200.00 to Mrs. Nichol and $1,200.00 to her attorney. As we stated heretofore, the estate was valued at $90,235.96 in 1951. In this third annual report filed in March, 1954, the net worth of the estate, after paying the guardian and attorney fees here attacked and after paying all other expenses, had increased to $119,405.40. It is, therefore, evident that there has been prudent handling of the estate. Mrs. Nichol had her attorney spend one day a month with General Metcalfe to personally see that he was well and happy, and we have previously commented on the visits that the Nichols made to General Metcalfe. We get the picture that this fine old soldier is being as well cared for as possible; that his guardian and her attorney are faithfully performing their duties; and that the Probate Court was correct in making the allowances.

Affirmed.