90 Ill. App.3d 383 (1980)
413 N.E.2d 70
In re ESTATE OF SARAFINA RUMORO, Incompetent.  (MINNIE AMENDOLA, Appellant,
v.
ROSETTA LEONI, Appellee.)
No. 79-1351.
Illinois Appellate Court  First District (5th Division).
Opinion filed November 7, 1980.
*384 Arthur S. Gomberg, of Chicago (Samuel Nineberg, of counsel), for appellant.
John M. Burke, of Burke & Burke, Ltd., of Chicago, for appellee.
Reversed and remanded.
Mr. JUSTICE WILSON delivered the opinion of the court:
Plaintiff appeals from an order removing her as conservator of the estate of the incompetent, Sarafina Rumoro, for alleged improper conduct. The order further directed her to file a complete accounting and found that she was not entitled to compensation for the support and care of the incompetent. On appeal, plaintiff presents these issues that: (1) her removal as conservator was improper and contrary to the Probate Act (Ill. Rev. Stat. 1977, ch. 110 1/2, pars. 23-2, 23-2(a));[1] (2) she is entitled to compensation for services rendered the incompetent; and (3) it is unjust and inequitable to compel her to account and provide receipts for the period prior to her appointment. We reverse and remand. The pertinent facts follow.
In June 1975, Sarafina Rumoro was discharged from the Cermak House Nursing Home as the staff could not handle or control her. At that *385 time she was taken into and cared for in the home of her daughter, Minnie Amendola. On March 29, 1978, a court order declared Sarafina Rumoro an incompetent, denied the petition of Rosetta Leoni to be appointed as her conservator and appointed plaintiff as conservator of her estate and person. The court also ordered an inventory and an accounting of all assets of the incompetent acquired by plaintiff, including expenditures and expenses of the incompetent while in the physical custody of plaintiff.
Plaintiff filed the first accounting in September 1978. Expenditures from July 1975 to July 1978 totaled $39,335.81, unsubstantiated by receipts, vouchers or checks. Total assets over that same period totaled $49,897.93, leaving a cash balance of $10,413.87. Plaintiff filed an amendment to her accounting in April 1979 showing disbursements totalling $65,984.06, leaving a deficit of $16,086.13 and asking the other brothers and sisters to contribute to make up for the deficit. The increase in the total disbursements was due to a recalculation of the incompetent's care, maintenance, board and medical supplies and included the period from July 1975 up to March 1979.
Objections were filed by Rosetta to the account and a hearing followed in October 1978. Plaintiff testified that there was a meeting of all the brothers and sisters where it was agreed that she would take care of her mother and have complete control over all of her assets. This testimony was corroborated by both of her brothers, John and Joseph Rumoro. Plaintiff then testified that she withdrew $29,326.40 from an account in her and her mother's name at Bellwood Savings and Loan. She further stated that she paid $2,300 to her brother Joseph to help him with expenses after the death of his wife. There was an additional expenditure of over $5,000 for rugs, curtains, and bedding and $1,536 for plaster to repair damage done by her mother in her bedroom. She denied using her mother's money for the purchase of her new home.
Jean Bertone, director of admissions for the Cermak House, testified on an offer of proof that nursing services for the care of an incompetent would be valued at approximately $35 per day.
Rosetta testified she never attended a meeting where it was agreed that plaintiff would handle all of the assets of Sarafina. She further testified that her mother receives $300 a month in social security benefits.
August Kalal, a branch manager of Great American Federal Savings, testified that Bellwood Savings and Loan was merged into Great America Federal Savings. He stated that on September 16, 1976, $29,326.40 was withdrawn from an account at Bellwood that had Sarafina Rumoro's name on it. Further, on this same date, plaintiff withdrew $6,713.93 from her own account at this bank. A check was then issued by the bank to her for $34,706.26, which was endorsed by her and the Harris Trust and *386 Savings from the First Federal Savings and Loan Association of Westchester. Additional testimony revealed that a check payable to plaintiff was drawn on Bellwood Savings and Loan and endorsed to Clifton Hall Real Estate Company in the amount of $6,000.
Robert Dostal testified that he is vice-president and comptroller of First Federal Savings and Loan of Westchester. He testified that title to certain property in Elmhurst, Illinois, was taken in joint tenancy by Mario and Minnie Amendola. They brought to the closing the sum of $34,706.26.
Richard Kates testified that there was an invoice from Prairie Material Sales for the delivery of ready-mix cement to plaintiff's home. He stated that a notation on the back of the invoice indicated that the cement was to be used "for drive." He further testified that ready-mix cement is not used for plastering walls, and the exact amount of the invoice was $1,536.16.
After the hearing, the court entered an order on May 17, 1979, finding that plaintiff took $34,706.26 from the incompetent's funds at Bellwood Savings and Loan for the purchase of her home. Further, that she took $6,000 from the incompetent's funds and deposited this amount as earnest money towards the purchase of her home, and that $1,536.16 of the incompetents funds was used to pay for a concrete driveway at her home, and additionally, that $2,300 from the incompetent's funds was given to Joseph Rumoro. The court ordered her removed as conservator of the estate of Sarafina Rumoro. Moreover, she was ordered to provide a complete accounting of the incompetent's estate and to turn over all assets of the incompetent to the clerk of the court. The order denied her compensation for the support and care of the incompetent because of her improper conduct. A post-trial motion was denied.

OPINION
Plaintiff contends that her removal as conservator was improper and contrary to the Probate Act (Ill. Rev. Stat. 1977, ch. 110 1/2, pars. 23-2, 23-3(a)). Defendant asserts that the conservator has wasted or mismanaged the estate and could be removed as conservator on the court's own motion. We agree with plaintiff's contention.
The Probate Act provides that a representative of an estate may be removed for causes enumerated under section 23-2. Section 23-2(a) provides in pertinent part:
"On petition of any interested person or on the court's own motion, the court may remove a representative for any of the following causes. * * *"
However, the Act provides that the procedure on removal requires a citation to be issued to show cause and be served at least 10 days before an answer is required. (Ill. Rev. Stat. 1977, ch. 110 1/2, par. 23-3(a).) *387 Section 23-3(c) allows the conservator to file a pleading to the petition for removal. This procedure was not followed.
Defendant's reliance on the case of In re Estate of Abbott (1976), 38 Ill. App.3d 141, 347 N.E.2d 215, is misplaced. In Abbott, the executor failed to account for $33,500 and failed to pay any real attention to the business of the estate. The court had entered an order on April 1, 1974, compelling the executor to show cause why he should not be held in contempt and be removed as executor for failure to account. On the return date the current account and report of the executor was filed. A subsequent court order was entered on May 20, 1974, stating that a hearing which provided among other things that a "further hearing on all pending matters including the removal of the executor" was continued to May 27, 1974. After the hearing the court determined that a statutory cause for removal was established on the basis of waste and mismanagement of the estate. Additionally, the executor was found unsuitable for the discharge of his duties and for other causes involved in his failure to protect the assets of the estate. On appeal, the executor argued that no citation to remove him was issued as provided in the Probate Act. The court determined that procedural requirements for removal were not strictly complied with but they were substantially sufficient to insure compliance with the intent and purpose of the Probate Act as the executor and his attorneys were notified and personally appeared at the May 27 hearing.
 1 We are unable to conclude that the hearing in the pending matter strictly or substantially complied with the statute. This matter came up when Rosetta Leoni filed an objection to the First Current Account. A subsequent hearing on the objections was held, but nowhere during the proceedings does it appear that the court apprised plaintiff that her conservatorship was in issue, unlike the executor in Abbott. After a hearing on the objections and reviewing the memoranda of law presented by counsel, the trial court ordered plaintiff removed as conservator and that she should be awarded no compensation for the support and care of the incompetent because of her improper conduct. We, therefore, conclude that plaintiff was not given reasonable notice of a removal hearing and not afforded a fair opportunity to defend against her removal. As such, this case must be remanded for a proper determination, in accordance with the requirements of the statute, of whether plaintiff should be removed as conservator of the estate of Sarafina Rumoro for any cause enumerated under section 23-2 of the Probate Act.
Plaintiff next argues that she is entitled to compensation for services rendered the incompetent from the period July 1975 to and including the present time. She was not allowed to assert her claim for compensation as the court sustained an objection on the relevancy of this issue. Plaintiff *388 then made an offer of proof which preserved this issue for appeal. She asserts that she had a right to rely on the agreement of her brothers and sisters to receive the assets of the incompetent in exchange for caring for her the rest of her life. Further, she argues she would be entitled to compensation under an implied contract theory. We believe that under the circumstances of this case plaintiff is entitled to a proper hearing on the question of compensation for services rendered the incompetent.
 2 We do not find it necessary to consider the merits of the issue regarding the validity of the alleged agreement among the brothers and sisters for the care of their mother. Moreover, we point out that plaintiff must establish the existence of a mutual understanding between her mother and herself that she was to be paid for her services before there can be a valid implied contract to compensate her therefor. Switzer v. Kee (1893), 146 Ill. 577, 35 N.E. 160; In re Estate of Manikowski (1967), 82 Ill. App.2d 201, 226 N.E.2d 421.
 3 We further note that where the person cared for is an incompetent, the statute provides that "[a] representative is entitled to reasonable compensation for his services * * *" (Ill. Rev. Stat. 1977, ch. 110 1/2, par. 27-1).[2] The decision as to what constitutes reasonable compensation is a matter peculiarly within the province and discretion of the probate court and each determination must be based on facts and circumstances of the particular case being determined. (In re Estate of Brown (1978), 58 Ill. App.3d 697, 374 N.E.2d 699; In re Estate of Saperstein (1974), 24 Ill. App.3d 763, 321 N.E.2d 328.) The factors to be considered in determining the reasonableness of fees are the size of the estate, the work done and the skill with which it was performed, the time required, and the advantages gained or sought by the services. Good faith, diligence and reasonable prudence should also be included so as to prevent on the one hand excessive charges and, on the other hand, inadequate allowances. (In re Estate of Brown (1978), 58 Ill. App.3d 697, 706-07, 374 N.E.2d 699, 707; In re Estate of Jaysas (1961), 33 Ill. App.2d 287, 292, 179 N.E.2d 411, 413.) The court can take into consideration its own knowledge of the value of services rendered (In re McHarry (1975), 26 Ill. App.3d 268, 325 N.E.2d 131), and whether plaintiff is guilty of wilful misconduct in the administration of the estate. People v. Birket (1929), 254 Ill. App. 96, aff'd (1930), 342 Ill. 333, 174 N.E. 388.
 4 If the court determines after a proper hearing that there has been wilful misconduct in the administration of the incompetent's estate, and the conservator has failed to make an account or settlement, then compensation for services may be refused. (Birket.) However, we limit *389 our holding here only to the procedural errors and do not express an opinion as to the merits of removal or compensation.
Plaintiff finally argues that it is unjust and unequitable to compel her to account and provide receipts for the period prior to her appointment.
The Act provides that:
"Within 60 days after the issuance of his letters the representative of the estate of a decedent or ward shall file in the court a verified inventory of the real and personal estate which has come to his knowledge * * *." Ill. Rev. Stat. 1977, ch. 110 1/2, par. 14-1.[3]
Our supreme court determined in Ermold v. Bear (1934), 358 Ill. 233, 193 N.E. 184, that the representative is not the sole judge of what should be included in the inventory. He may be compelled, on the filing of exceptions to the inventory, to list property over which there is a controversy.
Moreover, our supreme court has indicated that when a fiduciary relationship exists, there is a duty to fully and fairly account for funds and securities acquired before the appointment as conservator. (Stoltze v. Stoltze (1946), 393 Ill. 433, 66 N.E.2d 424.) In Stoltze, the wife received funds and securities from her husband while he was incompetent but before she was appointed his conservatrix. Additionally, she received funds and securities after her appointment as his conservatrix.
 5 We therefore conclude that plaintiff may be compelled to account and provide receipts for the period prior to her appointment.
For the foregoing reasons, we reverse and remand this case and direct the trial court to conduct a proper hearing in accordance with the statute to determine whether plaintiff is to be removed as conservator and whether she is entitled to compensation for services rendered the incompetent and for such other proceedings consistent with this opinion.
Reversed and remanded with directions.
LORENZ and MEJDA, JJ., concur.
NOTES
[1] Formerly Ill. Rev. Stat. 1975, ch. 3, pars. 23-2 and 23-3(a).
[2] Formerly Ill. Rev. Stat. 1975, ch. 3, par. 336.
[3] Formerly Ill. Rev. Stat. 1975, ch. 3, par. 171.