In re ESTATE OF FLORENCE DONNELLY, a Disabled Adult.—(Margie Lee Tegeler *et al.*, Guardians of the Person and Estate of Florence Donnelly, Petitioners-Appellants, *v.* Ralph J. Mendelsohn, Guardian *ad litem* of Florence Donnelly, Respondent-Appellee.)

Fifth District   No. 81—492

Opinion filed January 12, 1983.

JONES, J., dissenting.

Stephanie Robbins, of Earl L. Vuagniaux, P.C., of Edwardsville, for appellants.

Ralph J. Mendelsohn, of Mendelsohn & Simmons, of Alton, for appellee.

JUSTICE WELCH delivered the opinion of the court:

This appeal presents the question of whether plenary guardians for a disabled adult may be compensated from the estate of the adult for services rendered solely in relation to the emotional needs of the adult. We hold that, subject to guidelines pertaining to representatives' fees in general, they may be so compensated.

Florence Donnelly, the disabled adult, was discovered in June 1980 by appellants Margie Tegeler and June Smith through their work with a meals on wheels program. Ms. Donnelly, who was 73 years old at the time, lived alone in her Collinsville home in squalid conditions. She had a great deal of difficulty in caring for herself and was in a state of physical and mental deterioration.

The appellants, in addition to making frequent visits to Ms. Donnelly's home to assist in improving her personal hygiene and dietary habits, also attempted to locate any surviving relatives. It was determined that Ms. Donnelly's 85-year-old half-brother lived in Niles, Michigan. The half-brother came to Collinsville with a grandson, and, after visiting with the appellants and Ms. Donnelly, he agreed that the appellants should be appointed as her guardians. A petition to that effect was filed in the circuit court of Madison County in September 1980, and, on September 26, the appellants were appointed guardians of the person and of the estate of Florence Donnelly.

Pursuant to their appointment, the appellants had Ms. Donnelly placed in a nursing home, sold her Collinsville house and otherwise assumed the management of her estate, which is valued at approximately $90,000. They also visited her in the nursing home at least three times a week, brought presents and other items to her, took her on outings and invited her to their homes on holidays and other occasions. On January 23, 1981, the appellants filed an interim report of their activities between August 1, 1980, and December 31, 1980. That report alleged that the appellants had spent 444 hours in different capacities, performed for the benefit of Ms. Donnelly. The appellants petitioned the probate court to allow them $1,350 each as compensation for their services.

The court-appointed guardian *ad litem* for Ms. Donnelly objected to this request. At hearings on the appellants' report, he argued that the guardians should be compensated for managing Ms. Donnelly's estate and for attending to her physical needs, but not for services performed to meet her emotional needs. The court accepted this distinction "after evaluating the legal relationship between guardian and ward and after giving due consideration to the need for protecting a ward from possible abuses of her funds." The court allowed the appellants $1,000 compensation apiece, and it is from that order that the present appeal is taken.

The parties concede that there is no case law in Illinois purporting to decide whether plenary guardians may be compensated for services rendered solely in relation to the emotional needs of the disabled ward. There is no question that these activities would not be compensable if the appellants were only guardians of the estate of Florence Donnelly, for the duties of the guardian of the estate of a disabled adult do not encompass such activities. (Ill. Rev. Stat. 1981, ch. 110½, par. 11a—18(a); see also *Poling v. City Bank & Trust Co.* (Fla. App. 1966), 189 So. 2d 176.) Thus, if the appellants are entitled to compensation for these services, they may be entitled to it only in their capacity as personal guardians.

■ Section 27—1 of the Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110½, par. 27—1) provides in general terms that "[a] representative is entitled to reasonable compensation for his services." This provision, which has been applied to fees sought by the conservator of the estate of an incompetent (*In re Estate of Rumoro* (1980), 90 Ill. App. 3d 383, 413 N.E.2d 70; *In re Estate of Weber* (1978), 59 Ill. App. 3d 274, 375 N.E.2d 569), is broadly worded so as to indicate that it applies to reimbursement sought by a personal guardian as well.

The appellants argue that since no limitation is placed on the term

"services" by section 27—1, the trial court's distinction between services related to the emotional needs of the ward and other activities undertaken on behalf of the ward is unwarranted by the terms of that provision. They further contend that since the personal guardian of a disabled adult is required to "assist the ward in the development of maximum self-reliance and independence" (Ill. Rev. Stat. 1981, ch. 110½, par. 11a—17(a)) and to file reports informing the court of, *inter alia*, "the current mental, physical and social condition of the ward" and "the guardian's visits with and activities on behalf of the ward" (Ill. Rev. Stat. 1981, ch. 110½, pars. 11a—17(b)(1), (4)), it is incongruous to deny the guardian compensation for these mandatory activities.

We agree with this position. We find nothing to indicate that the term "services" in section 27—1 was intended to include all services rendered by a representative except those which further the emotional well-being of the ward, and the fact that the personal guardian is entrusted with the physical and mental development of the ward is additional evidence that that section should not be so limited. It would be unfair to require the personal guardian to attend to the adult's emotional needs while, at the same time, denying him any compensation for his activities in furtherance of those ends. Moreover, many of the tasks performed by the personal guardian serve multiple purposes, and we can foresee great administrative difficulties in attempting to differentiate between noncompensable services "performed exclusively in relation to the emotional needs of the ward" and other, compensable, services.

■ A statute which is unambiguously worded should be enforced according to the plain and ordinary meaning of that language. (*Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 381 N.E.2d 222; *People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 357 N.E.2d 1180.) Therefore, we hold that the word "services" in section 27—1 of the Probate Act of 1975 includes all services performed for the benefit of the ward, and does not exclude those services which only further the ward's emotional development. Courts in other jurisdictions have also allowed personal guardians of incompetent adults to receive compensation for activities which related only to the emotional needs of the ward (*Metcalfe v. Nichol* (1955), 225 Ark. 661, 283 S.W.2d 853; *Lake v. Hope* (1914), 116 Va. 687, 82 S.E. 738; *May v. May* (1872), 109 Mass. 252), and our construction of section 27—1 is in conformity with these decisions.

Finally, the guardian *ad litem* asserts, and the trial court agreed, that to allow compensation for such services would increase the possi-

ble abuses of an incompetent's estate by encouraging self-dealing and the claiming of excessive fees by the personal guardians. This argument proves too much. The dangers of excessive charges are present in the administration of all types of estates, and by guardians of the person and of the estate. The possibilities of such an abuse do not provide a rationale to allow compensation for managing the estate, or meeting the physical needs of the ward, but to deny any compensation for services to further the ward's emotional development. It should be remembered that all representatives' fees are within the strict control of the probate court (*In re Estate of Rumoro* (1980), 90 Ill. App. 3d 383), and, even if the potential for abuse could be said to furnish a logical justification to draw the distinction made at trial, we must presume that the control of the trial court would effectively eliminate those abuses.

In conclusion, we hold that sections 11a—17 and 27—1 of the Probate Act of 1975 must be read together to permit the probate court to consider services performed exclusively for the emotional benefit of the disabled adult in setting compensation for the adult's personal guardians. Because, in determining appellants' fees, the trial court expressly declined to consider those services, we must reverse the order granting fees to the appellants and remand this cause to the circuit court of Madison County to redetermine the appropriate fee award. We express no opinion as to a suitable amount for those fees.

Reversed and remanded.

KARNS, J., concurring.

JUSTICE JONES, dissenting:
I would affirm the trial court. The allowance of fees to the guardians for services performed exclusively for the emotional benefit of the ward represents a radical departure from pertaining norms and is wholly unwarranted. The statute relied upon by the majority is anything but express, and it is not amenable for use in this case. Furthermore, the cases from other jurisdictions do not furnish a precedent for the result reached by the majority.

The trial court entered an order which reflects that it gave full consideration to the guardians' claims and rejected them. The order recited in part,

"The court finds that services related only to the emotional needs of the ward should not be compensable to the Guardians. The Court reaches this conclusion after evaluating the legal re-

lationship between guardian and ward and after giving due consideration to the need for protecting a ward from possible abuses of her funds."

This language plainly shows the concern of the court that the situation was replete with conflict of interest and that to allow the claim as advanced would open the ward's estate to abuse. The court also noted that activities and companionship were available to the ward as inherent in the atmosphere of the nursing home where the ward now resides. The court ordered repayment of the cost of gifts to the guardians from the ward in excess of $100 each, provided limitations for future expenditures on behalf of the ward, and denied any future compensation for services and companionship exclusively for the emotional needs of the ward. The court's order is well reasoned and correctly assesses the intrinsic danger in permitting claims for services exclusively for the emotional needs of a ward. In my opinion, it should be affirmed.

This case presents to Illinois a new manner of seeking recompense for the extension of friendship and kindness to aged persons who are suffering from the lack thereof. A multitude of previous cases have dealt with rewards for friendship in the form of deeds, wills, joint accounts in banks and savings and loan institutions, and gifts of personal property. The judicial view of these types of cases reflects an abiding suspicion that the amount and duration of the attention, friendship and services conferred by the actors are directly proportional to the extent and duration of the estate of the befriended one. It is no wonder at all that the statutes denoting the types of services and acts for which guardians may be compensated from the ward's estate omit any mention of supplying a ward's emotional needs. As a general rule, fees are allowed to guardians only for such services and actions as produce a result that is cognizable in terms and concepts far more finite than "emotional needs." Almost any activity, any service, could be said to be to supply an "emotional need" of a ward. This is especially so where a nonprofessional person decides what services are necessary and whether they are beneficial to the recipient.

It is the duty of guardians to protect the estates of their wards. If the customary rules and guidelines are altered to permit the payment of fees and compensation for untrained, nonprofessional people to attend to and supply the emotional needs of wards, all wards' estates would be in jeopardy.

To allow fees and expenses to guardians for services performed exclusively for the emotional needs of the ward will open the estates

of wards to gross abuse and waste. Spurious claims and spurious assumption of beneficial consequences will be a natural result. No better example could be found than that supplied by this very case. The guardians bought a ring for the ward costing $266. They bought her a $135 chain for her birthday. They purchased a gold watch, a garnet and a diamond ring as "gifts" for the ward at a cost of $672. They purchased "gifts" from the ward to themselves at a cost of $435. All of these "gifts" were at the expense of the estate of the ward, an estate which the guardians in the exercise of their traditional role are bound to protect. Beyond the "gifts," the guardians seek compensation because they have devoted time to having fun with the ward, helping her to laugh again, go shopping, etc., etc. During these times of fun and laughter presumably the guardians were also enjoying themselves, so arguably the ward's estate should be granted an offset for the reciprocating fun and laughter enjoyed by the guardians.

It may be granted as true that friendship, companionship, visitation, meal-sharing, gift-giving, and so forth, shared with a ward, would naturally work a benefit to that ward, just as such pursuits are known to benefit all people everywhere. The allowance of compensation for such services as are shown in this case would open the estates of wards to situations replete with conflicts of interest. The services rendered the ward exclusively for the emotional benefit of the ward were not in pursuance of the advice of a physician, psychiatrist, psychologist or other trained professional. Professional help was neither sought nor received. Rather, it was the guardians, acting on their own, who determined the need for an extent of their services. They then proceeded to supply the services, assess the net effect of their work and pay themselves therefor.

None of this is to say that a guardian would be unable to supply a perceived need of a ward for companionship, association, psychological support, etc., and to seek professional advice and help to obtain it. The furnishing of professional help is within established guidelines and furnishes both support for the ward and protection for the estate.

The majority places reliance upon a segment of the statute governing the duties of a personal guardian. The segment is found in section 11a—17(a) of the Probate Act of 1975 and reads: "The guardian will assist the ward in the development of maximum self-reliance and independence." When this sentence is considered in the context of the entirety of section 11a—17(a), it is apparent that it is an admonition to a personal guardian to seek education and training for his ward to the extent that it may be assimilated to make the life of the ward as fruitful as possible. Happiness, companionship, meal-sharing and the

receiving and giving of gifts can be said to bear no relation to the "development of self-reliance and independence." Many among us are unhappy, dour loners who are nonetheless self-reliant and independent. But even if it be granted that the segment of section 11a—17(a) were applicable in this case, its purpose has been thwarted by the guardians. Prior to her encounter with the guardians the ward was living alone and supporting herself from her estate. Although her circumstances were less than desirable, she was, nevertheless both "independent and self-reliant." After the encounter with the guardians, the ward lost her independence and self-reliance by becoming a resident of a nursing home, subjecting herself to the care of others with the limitations implicit in her situation. While the ward is undoubtedly better off now, both physically and mentally, the point is made to show the inapplicability of the statutory segment to the ward's case.

The majority relies on a 1914 Virginia case, *Lake v. Hope*. It is factually inapposite, for it involved a committee (guardian) that was and had been the ward's physician. Furthermore, the court considered the services rendered to be of a professional nature and the compensation was limited to $100 per month from a sizeable estate. The majority also relies on a 1955 Arkansas case, *Metcalfe v. Nichol*, to support their decision. The case cannot stand as authority for the majority decision because the ward in that case stood *in loco parentis* to the guardian and the guardian stood *in loco filiae* to the ward.

If these guardians can recover fees for services related to the emotional needs of their wards, then others may do so as well. If, in reliance upon the majority opinion, it be thought that such services constitute a necessity, then those who furnish to a ward such services as those described in this case can seek recovery from the ward's estate in a quasi-contract action. Furthermore, guardians can now contract with their friends and relatives to furnish companionship, friendship and society to their wards and compensate them from the ward's estate for services rendered.