In the Matter of the Estate of Stella Manikowski, Deceased.
Jerry Paluta, et al., Appellees, v. Emmett J. McCarthy, Special Administrator, etc., Appellant.

Gen. No. 51,384.

First District, Fourth Division.

April 14, 1967.

Emmett J. McCarthy, pro se, of Chicago, appellant.

Posanski, Johannsen, Krohn & Jacobs, of Chicago, for appellees.

MR. JUSTICE DRUCKER delivered the opinion of the court.

This is an appeal from an order directing that the residual estate of the decedent, Stella Manikowski, be distributed to the claimants-appellees, Jerry and Marlene Paluta. The order was based upon a finding by the trial judge that the decedent entered into an oral contract with the aforesaid claimants in which she agreed to devise and bequeath the residual estate to them in return for the performance of specified services.

Stella Manikowski died testate on October 10, 1964. Her will, which named Jerry Paluta (one of the claimants) as executor, contained certain bequests of money (none of which were in behalf of claimants) and a direction that all of her personal and real property be sold. In accordance therewith all of the property was sold and the bequests, funeral expenses and creditors' claims were satisfied out of the proceeds. Remaining in the residual estate was approximately $15,000 (most of which represents the proceeds from the sale of decedent's house). However, the decedent made no disposi-

tion of the residual estate in her will. The appellees claimed the residuary on the basis of an oral contract. A Special Administrator (appellant) was appointed to defend the estate against this claim.[1]

In their claim Jerry and Marlene Paluta allege that the oral contract was consummated in the spring of 1961, immediately prior to decedent's visit to Poland to visit relatives. They further allege as the basis for the contract that:

> [A]t the time of her leaving for Poland, she asked the claimants to take charge of her house . . . and explained to them that, by reason of her age she would be unable to take care of the home herself and orally requested claimants to undertake the maintenance of her home together with the lawn, garden, fences, sidewalk, etc., and that in consideration therefor, decedent orally promised to make a Will leaving specific bequests and leaving the residual estate to claimants.

After the death of her husband, John, in 1958, Stella Manikowski lived alone in a two-flat building at 8608 South Essex Avenue in Chicago, Illinois. She resided there until her death at age 75. In 1949 John and Stella Manikowski were instrumental in bringing Marlene Paluta, a claimant herein who was also John Manikowski's grandniece, to America from Poland and she resided in their house until her marriage to Jerry Paluta in 1954. According to the uncontradicted testimony the Palutas lived two or three blocks from the Manikowski home, visited there socially before the death of decedent's husband, and thereafter visited as often as twice weekly. Jerry Paluta cared for the landscaping and

---

[1] If the claimants are not entitled to the residual estate the property passes intestate to the decedent's half-brother, a resident of Poland.

gardening, and Marlene shopped and drove the decedent to the doctor and to church.

Since claimants were barred from testifying by the provisions of section 2 of the Evidence Act (Ill Rev Stats 1965, c 51, § 2), and Stella Manikowski was dead, they adduced the testimony of various friends and neighbors of the decedent in order to establish the existence of the alleged oral contract. All of the testimony related to the two-flat building on Essex Avenue. Olga Kuk testified that decedent said to her:

> Mr. and Mrs. Paluta, they help me, and when I go I leave the home for them.

Walter Jakacic testified as to his conversations with the decedent relative to purchasing the building:

> I mentioned to her that the home was a burden. I mentioned to her that I would like to purchase the home . . . . She said as long as the Palutas were giving her a hand and taking her to the doctor, she would make provisions in a will [that] the home would be theirs. Again I approached her on the same subject . . . . She said the home would be provided to the Palutas for being so good to her.
>
> . . . . . .
>
> She said, as far as having them [the Palutas] to depend on it, she made a will out and the home would go to the Palutas for all they did for her.
>
> . . . . . .
>
> In both conversations, Mrs. Manikowski mentioned a will. She spoke of the provisions of the will. She said that the home was to go to Mr. and Mrs. Paluta.

Jane Trzcinski also testified as to her conversations with the decedent:

She said she had a will. She was real modern. She kept saying how modern she was. She had her house taken care of. She was going to leave it to the Palutas, not that they need the house, they could use the money. They would sell the house for the children's education.

There was another conversation in November or December, 1963 . . . . [S]he wasn't feeling good. She says she is OK, all prepared to die. She has funeral arrangements made, the will made. Everything is provided for. She provided for the Palutas. They are to get the house.

No evidence was adduced by the defendant.

 Even though none of the witnesses used the word "contract" in describing the alleged testamentary arrangement the decedent had with the claimants, this is not a requisite to establish the contract's existence. Anson v. Haywood, 397 Ill 370, 74 NE2d 489. In that case it was alleged in the complaint that the decedent had orally agreed to devise to plaintiff and his wife all of his property if they would move into his home and generally care for him; and that contrary to the aforesaid agreement plaintiff was not made a beneficiary under the decedent's will. Plaintiff adduced testimony to show that the decedent requested a neighbor couple to live in his home and care for him, stating that he would give them the property "after he passed," but this request was turned down. Subsequently, the decedent told them "Luther and Lutie [referring to plaintiff and his wife] are going to take the proposition I offered you." Decedent's barber also testified and stated that in response to his inquiry as to the decedent's proposed disposition of his property, the decedent informed him that "I have made provision for Luther to have everything that I have," and "Luther and his wife have

taken good care of me and I am leaving everything to them." Similar testimony of various other witnesses was adduced by the plaintiff. Various acquaintances of the decedent testified in behalf of the defendants and stated that they were unaware of any arrangement with the plaintiff whereby plaintiff was to receive the decedent's property upon death. We would point out that the court in Haywood, supra, held that the existence of an oral contract had been established, notwithstanding that the decedent had executed a will which was entirely in conflict with the provisions of the alleged contract. In the instant case, however, the decedent's will was not inconsistent with the alleged contractual provisions since there was no testamentary disposition of the residual estate.

■ ■ We would point out that while claimants allege an oral contract to devise and bequeath the entire residuary estate, the evidence which was adduced went only to the existence of a contract relating to the decedent's house. Therefore, under the evidence adduced, the claimants could not possibly have established an oral contract to devise and bequeath the entire residuary estate. However, we find that the claimants have established the existence of a contract to devise the decedent's house.[2] The evidence adduced by the claimants as to the alleged contract was uncontradicted and, under all of the circumstances of this case, was corroborated in two important and necessary respects: first, the decedent's appointment of Jerry Paluta as executor; and, second, the fact that even though the decedent died

---

[2] Defendant does not contend that the alleged contract, even if established, was in violation of the Statute of Frauds. Nor would that contention be meritorious since there has been performance by the claimants. An oral contract, even for the future conveyance or devise of land, is not within the Statute of Frauds if it has been completely performed by one of the parties thereto. Anson v. Haywood, 397 Ill 370, 74 NE2d 489.

testate there was no disposition in her will of the house, which was her primary asset, or of the residual estate.

Therefore the order directing that the residual estate of the decedent be distributed to the claimants, Jerry and Marlene Paluta, is reversed and the caused remanded with directions that the trial court enter an order that: (1) the proceeds from the sale of the decedent's house on Essex Avenue be distributed to the claimants, and (2) the proceeds from the sale of the decedent's personal property be distributed as intestate property subject to all of the fees and expenses attributable thereto.

Reversed and remanded with directions.

ENGLISH, P. J. and McCORMICK, J., concur.